UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
KENNETH BAILEY, et al.,                :
                                       :
             Plaintiff,                :        08 Civ. 8563 (JSR)
                                       :
                                       :        OPINION AND ORDER
             - v -                     :
                                       :
GEORGE PATAKI, et al.,                 :
                                       :
             Defendants.               :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

        This Opinion and Order details the Court's reasons for

denying defendants' contention on summary judgment that they are

entitled to qualified immunity as a matter of law and formally

confirms that determination.

        By way of background, between 1998 and 2005 former New York

State Governor George Pataki made several attempts to get the New

York State Legislature to enact legislation providing for the

civil confinement following completion of their criminal

sentences of certain inmates who had been convicted of qualifying

sexual offenses.  Plaintiffs' Statement of Uncontested Material

Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 4; Defendants'

Response to Plaintiffs' Statement of Uncontested Material Facts

Pursuant to Local Rule 56.1 ("Def. Counter 56.1") ¶ 4.  But when

the New York State Assembly would not bring the proposed

legislation to a vote, id. ¶ 5, Pataki proceeded unilaterally by

promulgating on September 12, 2005 an executive initiative
requiring indefinite civil confinement in State psychiatric
hospitals of criminal inmates who, at the completion of their
terms of imprisonment, were deemed to be "sexual violent
predators" ("SVPs"), id. ¶ 7.  This was known as the Sexual
Violent Predator ("SVP") initiative.

    Before promulgating the SVP initiative, Pataki's executive
staff had internal discussions, as well as discussions with staff
of various State agencies such as the Office of Mental Health
("OMH") and the Department of Correctional Services ("DOCS")
regarding the purported legal authority for the initiative, the
capability of the agencies to implement it, and the procedures
for its implementation.  Id. ¶ 35.  (However, the defendants have
now expressly disclaimed any defense of the instant actions based
on reliance on counsel.  See Transcript, 5/13/10, at 13.)

    A key part of the SVP initiative was that it allowed
involuntary civil commitment of the SVP convicts pursuant to the
procedures and standards set forth in Section 9.27 et seq. of the
New York Mental Hygiene Law ("MHL"), rather than those set forth
in Section 402 of the New York Correction Law.  Among other
things, MHL § 9.27 permits two state-employed psychiatrists to
effectuate the involuntary civil commitment of "any person
alleged to be mentally ill and in need of involuntary care and

treatment," without any prior judicial hearing or determination, see N.Y. Mental Hyg. Law § 9.27, whereas Correction Law § 402 permits transfers of an inmate to civil confinement in a psychiatric facility only upon a judicial determination made after notice, hearing, and examination by court-appointed psychiatrists, see Corr. Law § 402.

A year later, the New York Court of Appeals unanimously determined that Correction Law § 402, rather than MHL § 9.27, is the appropriate method for evaluating an incarcerated inmate for postrelease involuntary commitment to a mental facility. State ex rel. Harkavy v. Consilvio, 7 N.Y.3d 607 (2006). Although the Harkavy court did not have reason to reach the constitutional issue, Judge Robert S. Smith, concurring, noted that if MHL § 9.27 was applied in such a case "it would raise serious constitutional problems" because the justification for the absence of a predeprivation hearing under § 9.27 -- viz., the imminent danger of the mentally ill person to society -- is absent in the case of an incarcerated convict. Id. at 615.

The plaintiffs in these six now-consolidated cases, see Order dated June 15, 2010 (Docket Entry #101), were all nearing the completion of their prison sentences for sexual offenses in and around 2005 (i.e., prior to the Court of Appeals decision in Harkavy) when, pursuant to the SVP initiative, they were

3

committed to indefinite civil confinement under the procedures outlined in MHL § 9.27.   The instant actions allege, pursuant to 42 U.S.C. § 1983, that defendants thereby violated plaintiffs' Fourth Amendment right against unreasonable seizure and plaintiffs' Fourteenth Amendment rights to procedural and substantive due process and equal protection.   Similar violations are also alleged under 42 U.S.C. § 1985(3) (involving conspiracy) and under various provisions of New York State law.

Early in the case, defendants moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiffs' complaints on the ground, inter alia, of qualified immunity.   In an Opinion and Order dated July 10, 2009, the Court denied this motion without prejudice to its being renewed at the close of discovery.   See Opinion and Order, July 10, 2009, at 14 (Docket Entry #31).   Following extensive discovery and other motion practice, both sides moved for summary judgment on March 31, 2010.   Specifically, the defendants moved for summary judgment in their favor on all claims, both on the ground of qualified immunity and on the merits, and plaintiffs moved for summary judgment against defendants George Pataki, Eileen Consilvio, Glenn S. Goord, Sharon Carpinello, Paul Annetts, Dale Artus, James Conway, Robert Dennison, and Leo E. Payant (the "defendant officials") on plaintiffs' due process claims under § 1983, their conspiracy

4

claim under § 1985(3), and their false imprisonment claim under New York State law.[1]

After receiving extensive briefing and oral argument, the Court, on May 20, 2010, notified the parties in a "bottom-line" Order (with Opinion to follow) that it intended to deny plaintiffs' motion in its entirety but to grant defendants' motion in part, specifically by dismissing (a) the federal claims against most of the correctional facility superintendents, (b) all state law claims against defendants Annetts, Artus, Conway, Goord, Payant, Sackett, and Tedford, (c) the false imprisonment claims brought by plaintiffs Massei, Trocchio, and Warren against the other defendant officials, and (d) all state law claims of assault and battery, abuse of process, and negligent or intentional infliction of emotional distress against all other defendants.  See Order, dated May 19, 2010, at 3-4 (Docket Entry #98).  Following entry of this Order, all remaining claims against all remaining defendant physicians were voluntarily dismissed with prejudice by stipulation dated June 17, 2010 (Docket Entry #102). This left pending against the remaining

---

[1] The individual defendants who are not officials are Olusegun Bello, Charles Chung, Lawrence Farago, Prabhakar Gumbala, Luis Hernandez, Michael Kunz, Samuel Langer, Jean Liu, Abadul Qayyum, Mary Ann Ross, Emilia Rutigliano, Ayodeji Somefun, and Allan Wells (collectively, the "defendant physicians").

defendant officials the federal claims under § 1983 for violation
of plaintiffs' Fourth Amendment right against unreasonable
seizure and Fourteenth Amendment rights to procedural and
substantive due process and equal protection; the claims under
both § 1983 and § 1985 for conspiracy; the state constitutional
claims and state law claims for negligence and gross negligence;
and the claims of plaintiffs Bailey, Brooks, and Burgos for false
imprisonment.

Although the Court initially intended to issue a single
Opinion giving its reasons for all these rulings, thereafter,
upon defendants notifying the Court of their intention to seek an
interlocutory appeal of the portion of this ruling denying
qualified immunity to the defendant officials, the Court agreed
to issue this Opinion and Order formally confirming its denial of
the defense of qualified immunity and stating the reasons
therefore, with a further Opinion and Order stating the reasons
for the denial of summary judgment on the merits to follow in due
course.

Qualified immunity shields public officials performing
discretionary duties from liability for civil damages "as long as
'their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known.'" Taravella v. Town of Walcott, 599 F.3d 129, 133 (2d

6

Cir. 2010) (quoting <u>Gilles v. Repicky</u>, 511 F.3d 239, 243 (2d Cir. 2007)).  "When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'"  <u>Id.</u> (citing <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009)).  If either prong is missing, qualified immunity is warranted; however, the burden is on defendants to establish qualified immunity.  "[B]ecause qualified immunity is an affirmative defense, it is incumbent upon the defendant to plead, and adequately develop, a qualified immunity defense during pretrial proceedings."  <u>Zellner v. Summerlin</u>, 494 F.3d 344, 368 (2d Cir. 2007).

The Court first examines defendant officials' contention that they are entitled to qualified immunity in the context of plaintiffs' claims that they were denied procedural due process when, pursuant to the SVP initiative promulgated and/or implemented by the defendant officials, the plaintiffs were involuntarily committed to civil confinement without advance written notice, an evaluation by court-appointed physicians, and, most importantly, a predeprivation judicial hearing.  <u>See, e.g.</u>, Bailey Amended Complaint for Damages ¶¶ 43-47; Brooks Amended

Complaint for Damages ¶¶ 43-45, 47; Burgos Amended Complaint for Damages ¶¶ 47-51; Massei Amended Complaint for Damages ¶¶ 42-43, 45; Trocchio Amended Complaint for Damages ¶¶ 44-47; Warren Complaint for Damages ¶¶ 48-49, 55.

To successfully state a claim under 42 U.S.C. § 1983 for denial of procedural due process, plaintiffs must show that they (1) possessed an actual liberty interest, and (2) were deprived of that interest without being afforded sufficient procedural safeguards.  See Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000); see also Zinermon v. Burch, 494 U.S. 113, 126 (1990) ("to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.").

Defendants do not question that plaintiffs possess a liberty interest that was infringed when they were involuntarily committed to civil confinement.  Indeed, it is well established that involuntary commitment to a psychiatric facility entails "a massive curtailment of liberty," Vitek v. Jones, 445 U.S. 480, 491-92 (1980), and thus cannot be done without affording the detainee adequate due process protection.  Addington v. Texas, 441 U.S. 418, 425 (1979)("civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection").  The fact that a citizen has been

8

previously convicted of an offense involving sexual violations in no way deprives him of this protection. "A criminal conviction and sentence of imprisonment . . . do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections." Vitek, 445 U.S. at 493-94.

Where a person is already confined (as because he is serving a criminal sentence), so that he presents no immediate danger to the community, full due process must be accorded before he can be transferred, upon completion of his sentence, to involuntary civil commitment. Thus, the Supreme Court in Vitek held that the Due Process Clause "entitles a prisoner . . . to certain procedural protections, including notice, [and] an adversary hearing . . . before he is transferred involuntarily to a state mental hospital for treatment of a mental disease or defect." 445 U.S. at 482. The "notice is essential to afford the prisoner an opportunity to challenge the contemplated action and to understand the nature of what is happening to him." Id. at 496. Even more essential is a predeprivation adversary hearing, after the notice, at which the prisoner can see the evidence for the commitment and be given an opportunity to be heard in person, as well as present testimony and engage in cross-examination of the state's witnesses. Id. at 494-95. It is also essential that the

decisionmaker issue a written statement providing the reasons for
the inmate's transfer and commitment, which can then be
challenged on appeal.  <u>Id.</u>

For purposes of assessing the defendant officials'
contention that they are entitled to summary judgment dismissing
plantiffs' due process and other claims because of qualified
immunity, the facts must be taken most favorably to plaintiffs as
long as they are supported by competent evidence.  Plaintiffs'
evidence shows that none of the essential requirements set forth
in <u>Vitek</u> was met.  As each of the plaintiffs approached the end
of his prison term, he was identified by DOCS as an inmate who
met the criteria under the SVP initiative for evaluation for
involuntary civil commitment.  Bailey Defendants' Statement of
Undisputed Material Facts Pursuant to Local Rule 56.1 ("Def.
56.1") ¶ 95, Bailey Plaintiff's Statement Pursuant to Local Rule
56.1 ("Pl. Counter 56.1") ¶ 95; Brooks Def. 56.1 ¶ 95, Pl.
Counter 56.1 ¶ 95; Burgos Def. 56.1 ¶ 94, Pl. Counter 56.1 ¶ 94;
Massei Def. 56.1 ¶¶ 92, Pl. Counter 56.1 ¶ 92, Trocchio Def. 56.1
¶ 97, Pl. 56.1 ¶ 97; Warren Def. 56.1 ¶ 89, Pl. Counter 56.1 ¶
89.  After OMH staff prepared background information sheets that
included information about each plaintiff's criminal and
disciplinary record, each of the plaintiffs, without the
slightest advance notice, was thereupon transferred from his

respective correctional facility to another facility for an initial evaluation by two physicians, neither of whom was court-appointed.  Bailey Def. 56.1 ¶¶ 96, 98, Pl. Counter 56.1 ¶¶ 96, 98, Pl. 56.1 ¶¶ 107-09, Def. Counter 56.1 ¶¶ 107-09; Brooks Def. 56.1 ¶¶ 96, 98, Pl. Counter 56.1 ¶¶ 96, 98, Pl. 56.1 ¶¶ 121-22; Def. Counter 56.1 ¶¶ 121-22; Burgos Def. 56.1 ¶¶ 97-98, Pl. Counter 56.1 ¶¶ 97-98, Pl. 56.1 ¶¶ 132-33, Def. Counter 56.1 ¶¶ 132-33; Massei Def. 56.1 ¶ 93, Pl. Counter 56.1 ¶ 93, Pl. 56.1 ¶¶ 143-44, 146, Def. Counter 56.1 ¶¶ 143-44, 146; Trocchio Def. 56.1 ¶¶ 98, 101, Pl. 56.1 ¶¶ 98, 101, Pl. 56.1 ¶¶ 156-58, Def. Counter 56.1 ¶¶ 156-58; Warren Def. 56.1 ¶¶ 90, 93, Pl. Counter 56.1 ¶¶ 90, 93, Pl. 56.1 ¶¶ 171-73, Def. Counter 56.1 ¶¶ 171-73.

After the evaluation, each physician produced a written certificate indicating that, under the standard set forth in MHL § 9.27, the plaintiff evaluated by that physician was in need of involuntary commitment.  Bailey Pl. 56.1 ¶ 111, Def. Counter 56.1 ¶ 111, Def. 56.1 ¶¶ 113, 135, Pl. Counter 56.1 ¶¶ 113, 135; Brooks Pl. 56.1 ¶ 125, Def. Counter 56.1 ¶ 125, Def. 56.1 ¶ 111, Pl. Counter 56.1 ¶ 111; Burgos Pl. 56.1 ¶ 135, Def. Counter 56.1 ¶ 135, Def. 56.1 ¶¶ 118, 145, Pl. Counter 56.1 ¶¶ 118, 145; Massei Pl. 56.1 ¶ 148, Def. Counter 56.1 ¶ 148, Def. 56.1 ¶ 114, Pl. Counter 56.1 ¶ 114; Trocchio Pl. 56.1 ¶ 156, Def. Counter 56.1 ¶ 156, Def. 56.1 ¶¶ 130, 146, Pl. Counter 56.1 ¶¶ 130, 146;

Warren Pl. 56.1 ¶ 175, Def. Counter 56.1 ¶ 175, Def. 56.1 ¶¶ 113, 132, Pl. Counter 56.1 ¶¶ 113, 132.  Upon receipt of the evaluations, the superintendent of the respective correctional facility where the plaintiff was serving his prison term then applied for each plaintiff's involuntary commitment to an OMH facility following completion of his prison term, after which the plaintiff, again without the slightest notice, let alone a hearing, was transported to the Manhattan Psychiatric Center ("MPC").  Bailey Pl. 56.1 ¶¶ 112-13, Def. Counter 56.1. ¶¶ 112-13, Def. 56.1 ¶¶ 138-39, Pl. Counter 56.1 ¶¶ 138-39; Brooks Pl. 56.1 ¶ 126, Def. Counter 56.1 ¶ 126, Def. 56.1 ¶ 117, Pl. Counter 56.1 ¶ 117; Burgos Pl. 56.1. ¶ 136, Def. Counter 56.1 ¶ 136, Def. 56.1 ¶ 147, Pl. Counter 56.1 ¶ 147; Massei Pl. 56.1 ¶ 149, Def. Counter 56.1 ¶ 149, Def. 56.1 ¶¶ 132, 134, Pl. Counter 56.1 ¶¶ 132, 134; Trocchio Pl. 56.1 ¶¶ 161-62, Def. Counter 56.1 ¶¶ 161-62, Def. 56.1 ¶¶ 147-48, Pl. Counter 56.1 ¶¶ 147-48; Warren Pl. 56.1 ¶ 175, Def. Counter 56.1 ¶ 175, Def. 56.1 ¶¶ 147-48, Pl. Counter 56.1 ¶¶ 147-48.[2]

After arriving at the MPC, each plaintiff was evaluated by a third physician, also not court-appointed, who confirmed the need

---

[2] In Warren's case, he was approaching his conditional release date, and the certificate of release to parole supervision specified that his residence would be the MPC.  See Warren Def. 56.1 ¶¶ 147-48, Pl. Counter 56.1 ¶¶ 147-48.

for civil commitment.  Bailey Def. 56.1 ¶¶ 147, 150, Pl. Counter
56.1 ¶¶ 147, 150; Brooks Def. 56.1 ¶¶ 118, 129, Brooks Pl.
Counter 56.1 ¶¶ 118, 129; Burgos Def. 56.1 ¶¶ 149, 155, Pl.
Counter 56.1 ¶¶ 149, 155; Massei Def. 56.1 ¶¶ 134, 144; Pl.
Counter 56.1 ¶¶ 134, 144; Trocchio Def. 56.1 ¶¶ 148, 164,
Trocchio Pl. Counter 56.1 ¶¶ 148, 164; Warren Pl. 56.1 ¶ 182-83,
Def. Counter 56.1 ¶¶ 182-83.  No written notification of any of
these psychiatric evaluations, or the reason for them, was
provided to any of the plaintiffs prior to the evaluations, nor
was any of the plaintiffs afforded a judicial hearing prior to
being evaluated or committed.  Bailey Pl. 56.1 ¶¶ 115-16, Def.
Counter 56.1. ¶¶ 115-16; Brooks Pl. 56.1 ¶¶ 128-29, Def. Counter
56.1. ¶¶ 128-29; Burgos Pl. 56.1. ¶¶ 139-40, Def. Counter 56.1 ¶¶
139-40; Massei Pl. 56.1 ¶¶ 151-52, Def. Counter 56.1 ¶¶ 151-52;
Trocchio Pl. 56.1 ¶¶ 164-65; Def. Counter 56.1 ¶¶ 164-65; Warren
Pl. 56.1 ¶¶ 180-81; Def. Counter 56.1 ¶¶ 180-81.  It is thus
obvious that, accepting plaintiffs' evidence as accurate for
purposes of this motion, plaintiffs' civil confinement did not
remotely comport with constitutional requirements.  Nor do
defendants allege that any of these deprivations was the result
of negligence or oversight.  Cf. Daniels v. Williams, 474 U.S.
327, 331 (1986) (finding negligence insufficient to sustain
procedural due process claim in such a context).

13

As previously noted, defendants are entitled to qualified immunity if they show either that plaintiffs have failed to make out a violation of constitutional right or if the right at issue was not clearly established at the time of the alleged violation. With respect to the first prong, defendants argue that, despite their patent failure to comply with the essentials of procedural due process set forth in Vitek, (i) Vitek does not govern plaintiffs' due process rights in this particular context, and (ii) the procedures here followed -- largely derived from MHL § 9.27 -- were constitutionally adequate based on a balancing of public and private interests.

As to Vitek, the defendants advance the same argument that this Court previously rejected in its July 10, 2009 Opinion: that because Vitek struck down Nebraska Law § 83-180(1), which dealt with inmates who were transferred during their sentences for treatment, but not § 83-180(3), which dealt with inmates transferred at the end of their sentences, the Vitek requirements do not apply to the latter situation.  As fully elaborated in the July 10, 2009 Opinion at 7-8 (and therefore not repeated here), this is a much too narrow reading of Vitek and would effectively nullify its reasoning.

But even if it were otherwise and Vitek was not itself dispositive, no balancing of public and private interests can

14

remotely justify what happened here.  Defendants note that, pursuant to MHL § 9.27, each of the plaintiffs, within days after their civil confinement, was notified of the right to a post-deprivation hearing.  See Bailey Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Bailey Def. Mem.") at 14; Brooks Def. Mem. at 12-13; Burgos Def. Mem. at 12-13; Massei Def. Mem. at 12-13; Trocchio Def. Mem. at 12; Warren Def. Mem. at 15.  But this is not a case where post-deprivation notice and hearing somehow could be said to accord adequate due process.  As the Supreme Court held more than 20 years ago in Zinermon v. Burch, 494 U.S. 113, 132 (1990), pre-deprivation procedural safeguards must be provided when it is feasible to do so -- and there is nothing in the record here, taken most favorably to plaintiffs, that suggests any reason why it was infeasible for the plaintiffs here to be given pre-deprivation notice, pre-deprivation appointment of court-appointed physicians, or a pre-deprivation hearing.

Indeed, it would have been the simplest thing in the world to have all the required procedures undertaken before a given plaintiff completed his prison term and thus avoid any risk whatever that a plaintiff would be civilly committed, following the exercise of his prison term, without his full due process rights being accorded.

15

This is so obvious that no reasonable defendant official could have failed to miss it.  Yet defendants, turning to the second prong of their qualified immunity defense, argue that plaintiffs' asserted right to the aforementioned predeprivation safeguards was not clearly established at the time of the creation of the SVP initiative and plaintiffs' subsequent commitments.  See, e.g., Bailey Def. Mem. at 20-22.

"To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Taravella, 599 F.3d at 133 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  In this Circuit, the Court's determination that a right is clearly defined depends on whether "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful."  Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004) (internal quotation marks omitted).[3]  A government

---

[3]   What constitutes "a reasonable defendant" must, of course, be assessed in the context of the position a defendant held.  Thus, in its recent decision in Amore v. Novarro, No. 08-3150-cv, 2010 U.S. App. LEXIS 12736 (2d Cir. June 22, 2010), the Second Circuit held that a police officer was entitled to qualified immunity for violation of a loitering law that, although declared unconstitutional in 1983, had never been repealed by the legislature and, in amended form, was itself part of the Penal Law book provided to the officer.  Id. at *2-3, *29.

official is therefore entitled to immunity if his or her conduct was "objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." Taravella, 599 F.3d at 133 (quoting X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999)).

Defendants' principal argument that their actions were objectively reasonable is based on the assertion that, since at the time of the events here in question there had been a "two-decade practice of civilly committing inmates pursuant to MHL § 9.27," and since the SVP initiative was patterned to some degree on MHL § 9.27, a reasonable state official would have believed the initiative accorded with due process.  See, e.g., Bailey Def. Mem. at 22-23.[4]

_____

Here, by contrast, the defendant officials were of the highest level and consulted with numerous knowledgeable people before making their determination (over the objections of some of the people they consulted) to deprive persons subject to the SVP initiative of predeprivation notice and hearing.

[4] In so arguing, defendants note that the Second Circuit in Project Release v. Prevost, 722 F.2d 960 (2d Cir. 1983), rejected a facial challenge to MHL § 9.27.  However, the procedural challenge addressed in Project Release was utterly different from the ones here raised, and, even then, the Second Circuit expressly stated that "whether the statute is applied constitutionally remains an open question." 722 F.2d at 971.  The Court is also cognizant that another district court in this Circuit, deprived of the much fuller record presented to this Court, has concluded that a prisoner's due process right to predeprivation safeguards as outlined in Vitek was not clearly established when the SVP initiative was created and implemented. Specifically, in Lane v. Carpinello, No. 9:07-cv-751 (GLS/DEP), 2009 WL 3074344 (N.D.N.Y. Sept. 24, 2009), the district court, in

But this argument fails for several reasons.  First, as a
factual matter, plaintiffs have strenuously challenged the
assertion that there was such a practice, see, e.g., Bailey
Memorandum of Points and Authorities in Opposition to Defendants'
Rule 56 Motion at 35-36, and defendants have failed to come
forward with little more than conclusory assertions to prove
there was such a practice, let alone that it was well-known to
the relevant officials, see, e.g., Bailey Def. Mem. at 23-24.

Second, the basic proposition that due process requires a
predeprivation hearing unless there is an immediate danger to
society was so well established by 2005, indeed, for decades
prior, that New York's own highest court, in upholding the use of
MHL § 9.27 in the case of non-incarcerated persons, had made this
the ratio decidendi: "Due process does, ordinarily, demand
reasonable notice and an opportunity to be heard in advance of
confinement or restraint.  However, as we declared in Matter of
Coates, (9 N.Y.2 242, 173 N.E.2d 797, 213 N.Y.S.2d 74), 'where
immediate action is necessary for the protection of society and

---

adopting a magistrate judge's Report and Recommendation, held
that defendants in that case, who were responsible for the civil
commitment of a sex offender pursuant to the SVP initiative, had
violated the plaintiff's due process rights but were entitled to
qualified immunity on the theory that the right was not clearly
established at the time in light of Project Release and the fact
that Harkavy was not finally decided until 2006.  Id. at *11.
This Court, as the foregoing analysis confirms, reaches the
contrary result.

18

for the welfare of the allegedly mentally ill person, [it] does not require notice or hearing as a condition precedent to valid <u>temporary</u> confinement.'"  <u>Fhagen v. Miller</u>, 29 N.Y.2d 345, 355 (N.Y. 1972) (alteration in original).

Third, Correction Law § 402, enacted in 1976, already provided a clear, constitutional predeprivation hearing for ascertaining mental illness on the part of an incarcerated person, thus demonstrating the absence of any need for the extraordinary deprivations imposed by superimposing the MHL § 9.27 practices here.

Fourth, while the test here is an objective one (what a reasonable official would have believed), it is not irrelevant that the plaintiffs here have advanced competent evidence from which a jury could conclude that the decision to deprive SVP detainees of a predeprivation hearing by replacing the procedures of directly applicable Correction Law § 402 with those of seemingly inapplicable MHL § 9.27 was a deliberate decision taken for political reasons.  To deprive plaintiffs of their constitutional rights for political gain can never be reasonable.

The Court has considered defendants' other arguments but finds them unpersuasive.  For example, defendants argue that <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997), provides a reasonable basis for objectively believing that the SVP initiative complied

19

with procedural due process.  But <u>Hendricks</u> dealt exclusively with whether the definition of mental abnormality in the state's involuntary civil commitment scheme for sexually violent predators satisfied <u>substantive</u> due process, not procedural due process.  The Court found that the act "unambiguously requires a finding of dangerousness either to one's self or to others as a prerequisite of involuntary confinement," <u>id.</u> at 357, and, on that basis, upheld the involuntary civil commitment statute. Because <u>Hendricks</u> did not address whether the procedures in the Kansas involuntary commitment scheme were constitutionally adequate, no reasonable official could objectively believe that <u>Hendricks</u> provides a reasonable basis to conclude that the <u>procedures</u> used by the SVP initiative were lawful.

To be sure, the plaintiffs here are asserting claims, not just for deprivation of procedural due process, but also for deprivation of substantive due process and conspiracy, as well as state law claims for parallel state constitutional violations and for false imprisonment.  But the gist of those other claims, as here alleged, is that Governor Pataki and his top aides knowingly conspired to deprive SVP detainees of their liberty in a manner that shocks the conscience because, in plaintiff's submission, they knew for a fact that they violating plaintiffs' basic rights but chose for political advantage to so anyway.  While defendants

20

vehemently deny these allegations, plaintiffs have proffered sufficient competent evidence to make this a jury question.  By the same token, if these allegations are true, there is no theory on which defendants would be entitled to qualified immunity on any of plaintiffs' remaining claims.

Qualified immunity serves a critical function of ensuring that public officials can perform their duties without interference from the threat of litigation and monetary liability.  See Cornejo v. Bell, 592 F.3d 121, 124 (2d Cir. 2010); V.S. v. Muhammad, 595 F.3d 426, 431 (2d Cir. 2010).  Here, however, the Court concludes that, taking the record most favorably to plaintiffs, the procedures used for plaintiffs' involuntary commitment rather blatantly violated plaintiffs' constitutional rights and that no reasonable defendant official at the time could objectively believe that these procedures comported with procedural due process.  And, if the defendant officials knowingly conspired to achieve this end, they are likewise not entitled to qualified immunity on any of plaintiffs other claims.

Accordingly, for the foregoing reasons, the Court hereby confirms its determination, in the form of this Opinion and Order from which an interlocutory appeal may be taken, that the

defendant officials are not entitled to summary judgment on their
defense of qualified immunity.

                   SO ORDERED.

                                    _____
                                    JED S. RAKOFF, U.S.D.J.

        Dated:      New York, New York
                    July 6, 2010