UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
KENNETH BAILEY, et al.,               :
                                      :
            Plaintiffs,               :        08 Civ. 8563 (JSR)
                                      :
                                      :        OPINION
            - v -                     :
                                      :
GEORGE PATAKI, et al.,                :
                                      :
            Defendants.               :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

On May 19, 2010, the Court issued a "bottom-line" Order
denying plaintiffs' motion for summary judgment in its entirety,
and granting in part and denying in part defendants' motion for
summary judgment by dismissing (a) certain of the federal claims
against the correctional facility superintendents, (b) all state
claims against defendants Annetts, Artus, Conway, Goord, Payant,
Sackett, and Tedford, (c) the false imprisonment claims brought
by plaintiffs Massei, Trocchio, and Warren against the other
defendant officials, and (d) all state claims of assault and
battery, abuse of process, and negligent or intentional
infliction of emotional distress against all other defendants.
See Order, dated May 19, 2010, at 3-4 (Docket Entry #98).
Subsequently, moreover, all remaining claims against all
remaining physician defendants were voluntarily dismissed with
prejudice by stipulation dated June 17, 2010 (Docket Entry #102).

The "bottom-line" Order of May 19, 2010 promised that an
Opinion would follow providing the reasons for these rulings.  As
it happened, however, the promised Opinion was divided into two.
Specifically, in an Opinion and Order dated July 6, 2010, the
Court detailed its reasons for denying that aspect of defendants'
motion that contended that they were entitled to qualified
immunity as a matter of law.  This separation was necessary to
provide defendants an order from which an interlocutory appeal
could be taken on the issue of qualified immunity, an appeal that
is now pending before the Second Circuit.  The instant Opinion
thus provides the Court's reasons for all other aspects of the
Court's May 19 rulings.

Since the July 1, 2010 Opinion and Order summarizes the
basic facts of the case, particularly as regards the development
of the so-called "SVP initiative," full familiarity with that
Opinion and Order will be presumed.  In brief, on September 12,
2005, former New York State Governor George Pataki and his
executive staff, in consultation with the New York State Office
of Mental Health ("OMH") and the New York State Department of
Correctional Services ("DOCS"), promulgated an executive
initiative requiring indefinite civil confinement in State
psychiatric hospitals of criminal inmates who, at the completion
of their terms of imprisonment, were deemed to be "sexual violent

predators" ("SVPs").  Plaintiffs' Statement of Uncontested

Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶¶ 7, 35;

Defendants' Response to Plaintiffs' Statement of Uncontested

Material Facts Pursuant to Local Rule 56.1 ("Def. Counter 56.1")

¶¶ 7, 35.  This was known as the Sexual Violent Predator ("SVP")

initiative.  The SVP initiative provided for involuntary civil

commitment of the SVP convicts pursuant to the procedures and

standards set forth in Section 9.27 et seq. of the New York

Mental Hygiene Law ("MHL"), rather than those set forth in

Section 402 of the New York Correction Law.  In its 2005 form,

MHL § 9.27 permitted two state-employed psychiatrists to

effectuate the involuntary civil commitment of "any person

alleged to be mentally ill and in need of involuntary care and

treatment" without any prior judicial hearing or determination,

see N.Y. Mental Hyg. Law § 9.27, whereas Correction Law § 402

permits transfers of an inmate to civil confinement in a

psychiatric facility only upon a judicial determination made

after notice, hearing, and examination by court-appointed

psychiatrists, see Corr. Law § 402.  Given the

unconstitutionality of the Section 9.27 procedures as applied

under the SVP initiative, see Opinion and Order dated July 20,

2009 (Docket Entry # 31), plaintiffs, who had been confined

pursuant to those procedures, brought suit against virtually

3

everyone connected to their confinements.

The Court turns first to whether the plaintiffs' claims brought under 42 U.S.C. § 1983 against various correction facility personnel are time-barred.  Section 1983 claims that accrue in New York are governed by a three-year statute of limitations.  See, e.g., Cloverleaf Realty of New York v. Town of Wawayanda, 572 F.3d 93 (2d Cir. 2009).  A cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  Pinaud v. County of Suffolk, 52 F.3d 1139, 1156 (2d Cir. 1995).

As to the § 1983 claims brought by plaintiff Bailey, Superintendent Conway signed the MHL § 9.27 application for plaintiff Bailey on October 5, 2005, and Bailey was committed on October 7, 2005.  Therefore, by the latter date, Bailey should have known of his § 1983 claim against Conway.  However, Bailey did not file his complaint until October 7, 2008, more than three years later.  As a result, Bailey's § 1983 claims against Conway for unlawful commitment are time-barred.  However, Bailey's § 1983 claims against other defendant officials for injuries suffered following confinement remain timely.

As to the § 1983 claims brought by plaintiff Brooks, Superintendent Annetts signed the MHL commitment form for plaintiff Brooks on October 7, 2005, but Brooks was not civilly

4

committed until October 11, 2005.  Def. 56.1 ¶ 117; Pl. Counter

56.1 ¶ 117.  Since his complaint was filed on October 10, 2008,

Brooks' § 1983 claim against Annetts is timely, as are his § 1983

claims against the other defendant officials based on post-

confinement injuries.

As to the § 1983 claims brought by plaintiff Burgos,

Superintendent Conway applied on October 24, 2005 for the

involuntary confinement of plaintiff Burgos, but Burgos filed his

complaint on October 17, 2008, so his claims against Conway and

the other defendant officials are not time-barred.

Plaintiff Massei filed his complaint on October 17, 2008,

but he was transferred to the MPC on October 17, 2005, more than

three years earlier.  Therefore, his § 1983 claims against

defendant Leo E. Payant, Superintendent of Mohawk Correctional

Facility, who signed an application for admission to the MPC on

October 14, 2005, Def. 56.1 ¶ 132; Pl. Counter 56.1 ¶ 132, are

time barred.  However, the remaining § 1983 claims against the

defendant officials stemming from post-commitment activities are

not time-barred.

As to plaintiff Trocchio, Superintendent Artus signed an

Application for Involuntary admission on September 22, 2005, and

Trocchio was committed to the MPC on September 23, 2005.  Pl.

56.1 ¶ 161; Def. Counter 56.1 ¶ 161.  Trocchio filed his

complaint on October 17, 2008, nearly a month after the statute
of limitations had run.  Therefore, his § 1983 claim against
Artus is time-barred.  More difficult is whether his § 1983
claims against other defendant officials stemming from his post-
commitment activities are also time-barred.  On October 21, 2005,
Trocchio was transferred to the more secure facilities at Kirby,
NY because of his alleged involvement in a plot to kidnap a
female staff member at the MPC.  Pl. 56.1 ¶ 165; Def. Counter
56.1 ¶ 165.  At Kirby, defendant physician Michal Kunz evaluated
Trocchio for retention pursuant to MHL § 9.33.  Pl. 56.1 ¶ 166;
Def. Counter 56.1 ¶ 166.  To the extent that his procedural and
substantive due process claims accrue from his retention pursuant
to § 9.33, and not the procedures under Correction Law § 402, the
Court determines that his § 1983 claims against the remaining
defendant officials are not time-barred.

      As to plaintiff Warren, he was committed by Superintendent
Tedford to the MPC on September 27, 2005.  Pl. 56.1 ¶ 148; Def.
Counter 56.1 ¶ 148.  Warren filed his complaint on October 7,
2008, and thus any § 1983 claim against Superintendent Tedford is
time-barred.  However, Warren was transferred from the MPC to
Kirby on October 24, 2005.  Pl. 56.1 ¶ 162; Def. Counter 56.1 ¶
162.  In a forensic summary by Dr. James Hicks, the Associate
Clinic Director, Hicks recommended that Warren be discharged to

6

the community with parole supervision.  Pl. 56.1 ¶¶ 162-63; Def.
Counter 56.1 ¶¶ 162-63.  Warren was discharged from Kirby on
November 23, 2005, into the custody of officers of the New York
Division of Parole, who delivered him to DOCS's custody at the
Downstate facility and from there to the facility at Clinton, NY.
Pl. 56.1 ¶¶ 165; Def. Counter 56.1 ¶ 165.  Since the subsequent
transfer to Kirby and evaluation by Dr. Hicks was not undertaken
pursuant to the procedures of Correction Law § 402, the Court
concludes that the § 1983 claims brought by Warren against the
remaining defendant officials are not time-barred.

The Court next turns to the question of whether plaintiffs
have adduced sufficient evidence of the elements of the remaining
(non-time-barred) federal claims so as to withstand summary
judgment.

Beginning with plaintiffs' procedural due process claims,
the plaintiffs, in order to withstand summary judgment on their
claims, must adduce competent evidence that they (1)possessed an
actual liberty interest and (2) were deprived of that interest
without being afforded sufficient procedural safeguards.  See
Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000); see also
Zinermon v. Burch, 494 U.S. 113, 126 (1990) ("to determine
whether a constitutional violation has occurred, it is necessary
to ask what process the State provided, and whether it was

7

constitutionally adequate.").

In its July 6, 2010 Opinion and Order, the Court determined that defendants were not entitled to the defense of qualified immunity because, viewing the disputed facts most favorably to plaintiffs, plaintiffs had established a constitutional violation of their procedural due process rights. See July 6, 2010 Opinion at 10-13. This also defeats defendants' motion for summary judgment as to these claims. However, on plaintiffs' motion for summary judgment, the Court must view the disputed facts most favorably to defendants, and this serves to defeat plaintiffs' motion.

For example, as to many of the defendants, it is by no means clear that these defendants had any personal involvement in the due process deprivations complained of. While plaintiffs assert that these defendants had so-called "supervisory liability," see Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995), the scope of that liability has been severely restricted by the Supreme Court's recent decision in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-49 (2009), although, in this Court's view, not entirely eliminated. See D'Olimpio v. Crisafi, __ F. Supp. 2d __, 2010 WL 2428128 (S.D.N.Y. June 15, 2010). However, the Court need not reach at this juncture whether any of the claims against the defendant officials could survive solely on the basis of this narrowed

8

supervisory liability -- a subject as to which further guidance

from the Second Circuit, or the Supreme Court, may likely be

forthcoming before the trial of this case[1] -- because, taking the

facts most favorably to plaintiffs, the remaining defendants

still have some form of personal involvement that precludes

summary judgment.

For example, plaintiffs have adduced evidence that the

defendant officials (Pataki, Goord, Carpinello, and Consilvio)

each participated in the creation and implementation of an

initiative deliberately designed to circumvent predeprivation

safeguards required by procedural due process.  (Consilvio,

moreover, also was personally involved in the retention of these

individuals in the MPC.)  While defendants dispute the extent and

materiality of such involvement, as well as whether the

commitments here were pursuant to the SVP initiative or pursuant

to what defendants claim was an allegedly "long-standing"

practice of using the provisions of MHL § 9.27 to transfer

inmates to OHM facilities, these are questions for the jury.

Turning to plaintiffs' substantive due process claims,

plaintiffs contend that the procedures and standards employed

under the SVP initiative "shock the conscience" and that

---

[1] The trial has been adjourned pending the Second Circuit's
resolution of the qualified immunity appeal.

defendants lacked probable cause to subject defendants to a
psychiatric evaluation.[2]   In <u>County of Sacramento v. Lewis</u>, 523
U.S. 833 (1998), the Supreme Court stated:   "The threshold
question [in a substantive due process challenge to executive
action] is whether the behavior of the government officer is so
egregious, so outrageous, that it may fairly be said to shock the
contemporary conscience."   <u>Id.</u> at 847 n.8.   Here, plaintiffs have
adduced evidence that defendants, just days before plaintiffs'
scheduled release from prison on parole, compelled plaintiffs to
undergo psychiatric evaluations under threats of the inmates'
losing their parole release, and then, on the basis of brief and
superficial psychiatric evaluations using criteria that fell far
below the standards generally accepted in the medical community,
committed plaintiffs to indefinite civil confinement tantamount
to prison.   While defendants dispute much of this evidence, it is
enough to make the substantive due process claim a jury question.
See <u>Bolmer v. Oliveira</u>, 594 F.3d 134 (2d Cir. 2010).

--------

[2] In their opposition papers to defendants' motion for
summary judgment, plaintiffs alluded to the right to be free from
unreasonable government seizure and cite to Fourth Amendment
cases, <u>see, e.g.</u>, Bailey Mem. Opp. at 14.   However, the Court,
upon further consideration of the motion papers and arguments
presented at oral argument, <u>see</u> Tr. 5/13/10 at 37, interprets
plaintiffs' argument about unreasonable seizure to be part of the
substantive due process claim as a whole, and not a separate
Fourth Amendment cause of action untimely raised.

Plaintiffs also allege an equal protection claim, arguing
that the SVP inmates were treated differently from other inmates,
since the defendants, without any rational basis, applied MHL §
9.27 to the SVP initiative inmates and Correction Law § 402 to
all other inmates.  See, e.g., Bailey Am. Compl. ¶ 62, Bailey Pl.
Mem. Opp. at 20.  Although, again, defendants dispute parts of
the factual predicates on which this argument relies, the
resolution of these factual disputes is necessary to the
resolution of this claim and hence summary judgment must be
denied.

Both plaintiffs and defendants have moved for summary
judgment in their respective favors on plaintiffs' conspiracy
claims.  To make out a case of conspiracy under Section 1983,
plaintiffs must establish "(1) an agreement between two or more
state actors; (2) to act in concert to inflict an
unconstitutional injury; and (3) an overt act done in furtherance
of that goal causing damages."  See Pangburn v. Culbertson, 200
F.3d 65, 72 (2d Cir. 1999).  Defendants argue that summary
judgment should be granted in their favor because plaintiffs
cannot establish a cognizable conspiracy claim.  See, e.g.,
Bailey Def. Mem. at 46.  "Although a conspiracy need not be shown
by proof of an explicit agreement, a plaintiff must demonstrate
at least that parties have a tacit understanding to carry out the

11

prohibited conduct." <u>Cine SK8, Inc. v. Town of Henrietta</u>, 507
F.3d 778, 792 (2d Cir. 2007) (internal quotation marks omitted).
Because material issues of fact exist concerning the SVP
initiative's creation and the defendant officials' personal
involvement, as discussed above, there is considerable
uncertainty as to whether the defendant officials, or any two of
them, reached an agreement regarding the use of MHL § 9.27 and
particular standards of commitment.  Hence, neither side is
entitled to summary judgment.

The same reasoning applies to plaintiffs' conspiracy claim
under Section 1985, which requires plaintiffs to establish "(1) a
conspiracy; (2) for the purpose of depriving, either directly or
indirectly, any person or class of persons of equal protection of
the laws, or of equal privileges and immunities under the laws;
(3) an act in furtherance of the conspiracy; (4) whereby a person
is either injured in his person or property or deprived of any
right of a citizen of the United States." <u>Mian v. Donaldson,
Lufkin & Jenrette Securities Corp.</u>, 7 F.3d 1085, 1087-88 (2d Cir.
1993).  Genuine factual disputes about the involvement of each
particular defendant make it impossible for either side to obtain
summary judgment on this claim.

Nor is the Court persuaded that the intra-corporate
conspiracy doctrine bars either conspiracy claim, at least as

12

those claims are now framed.  Under the intracorporate conspiracy doctrine, "officers, agents and employees of a single corporate entity are legally incapable of conspiring together."  <u>Hartline v. Gallo</u>, 546 F.3d 95, 99 n.3 (2d Cir. 2008).  While there is support for applying the doctrine to public actors, <u>see, e.g.</u>, <u>Herrmann v. Moore</u>, 576 F.2d 453, 459 (2d Cir. 1978); <u>Kogut v. County of Nassau</u>, 2009 WL 2413648, at *13 (E.D.N.Y. Aug. 3, 2009); <u>Baines v. Masiello</u>, 288 F.Supp.2d 376, 394 (W.D.N.Y. 2003), the law in this area is far from settled, and the cases involve members of the same state agency, whereas multiple agencies were here involved.  Defendants have provided no authority for treating the activities of officers from multiple government agencies as a single "corporate" entity, and at least one court has rejected its application when more than one state agency was involved.  <u>See, e.g.</u>, <u>Ashiegbu v. Purviance</u>, 76 F. Supp. 2d 824, 830 (S.D. Ohio 1998).  While the issue may have to be revisited at trial depending on how the conspiracy claims are presented to the jury, for now summary judgment will be denied.

With respect to the state law claims against the defendant officials, the Court previously dismissed all state law claims against Commissioner Goord and Superintendents Annetts, Artus, Conway, Payant, and Tedford, since they are employees of DOCs and New York Correction Law § 24 states unequivocally that "[n]o

13

civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee." See N.Y. Correc. Law § 24.  Plaintiffs have in no way demonstrated that any of these defendants undertook activities outside the scope of employment -- indeed, plaintiffs' theory is that the entire initiative was undertaken as a part of an executive directive -- and therefore the Court reaffirms its previous ruling.  See Cepeda v. Coughlin, 513 N.Y.S.2d 528, 530 (N.Y. App. Div. 1987) ("an employee will be considered within the scope of his employment so long as he is discharging his duties, no matter how irregularly, or with what disregard of instructions.") (internal quotation marks omitted); Degrafinreid v. Ricks, 452 F. Supp. 2d 328, 332-33 (S.D.N.Y. 2006).

As to the state claims against the remaining defendant officials, most of their claims cannot be resolved on a motion for summary judgment for substantially the same reasons provided in the Court's discussion of federal constitutional claims. Cent. Sav. Bank v. City of New York, 280 N.Y. 9, 10, 19 N.E.2d 659 (1939) (state due process coextensive with federal due

14

process); <u>Under 21, Catholic Home Bureau for Dependent Children v. New York</u>, 65 N.Y.2d 344, 360 (1985) (state equal protection coverage "no broader" than federal equal protection).

A time-bar issue arises, however, as to plaintiffs' false imprisonment claims, which requires plaintiffs to show that (1) defendants intended to confine them; (2) plaintiffs were conscious of the confinement; (3) plaintiffs did not consent to the confinement; and (4) the confinement was not otherwise privileged. <u>Broughton v. State</u>, 37 N.Y.2d 451, 456 (1975). These claims are governed by a one-year statute of limitations that accrues when the individual is released from illegal custody.  "[T]he accrual date of a state common law cause of action is a question of state law, and under New York law, a 'cause of action for the tort of false imprisonment accrues' not on the date of arraignment but on 'the date of the prisoner's release from confinement.'"  <u>Lynch v. Suffolk County Police Dep't, Inc.</u>, 348 Fed. App'x 672, 675-676 (2d Cir. 2009).  As to the false imprisonment claims by Massei, Trocchio, and Warren, they were released from confinement, respectively, in May or June 2007, on July 18, 2007, and on October 23, 2006, and therefore, as the Court previously held and now reconfirms, those claims are time-barred.  Since, however, the other three plaintiffs remain

15

confined, their false imprisonment claims are not time-barred.[3]

As to the gross negligence and negligence claims, while plaintiffs assert a deliberate effort on the part of defendant officials to deprive them of constitutional rights, this does not preclude plaintiffs from seeking to establish, in the alternative, that defendants were negligent or even grossly negligent, by engaging in "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." Colnaghi, U.S.A. v. Jewelers Protection Servs., 81 N.Y.2d 821, 823-24 (1993). The Court therefore reaffirms its denial of summary judgment for defendants on these claims.

Finally, defendants argue that plaintiffs' assault and battery, abuse of process, and intentional infliction of emotional distress claims are all intentional tort claims barred by a one-year statute of limitations. The conduct that forms the basis of those claims was alleged to have occurred in September and October 2005, and therefore the claims are clearly time-barred, and plaintiffs have in no meaningful way opposed defendants' arguments. The Court therefore reaffirms its prior ruling dismissing these claims as against all defendant

---

[3] The Court does not reach the question of whether, if their confinement under MHC § 9.27 was superseded by confinement under a different, lawful, provision, the statute of limitations would then run.

16

officials.

For the foregoing reasons, the Court issued its "bottom-line" Order of May 19, 2010.

JED S. RAKOFF, U.S.D.J.

Dated:     New York, New York
           October 26, 2010

17