IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| KENNETH BAILEY, | 08-Civ-8563 (JSR) |
| CHARLES BROOKS, | 08-Civ-8665 (JSR) |
| SYLVIA TORRES, as Administratrix of the Estate of | |
| Jorge Burgos, Jr., | 08-Civ-8924 (JSR) |
| LOUIS MASSEI, | 08-Civ-8923 (JSR) |
| ROBERT TROCCHIO, | 08-Civ-8925 (JSR) |
| ROBERT WARREN, | 08-Civ-9609 (JSR) |

PLAINTIFFS

vs

GEORGE PATAKI, et al.,

DEFENDANTS
_____

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES
AND OTHER DISCRETIONARY COSTS PURSUANT TO
42 U.S.C. § 1988 AND FED.R.CIV.P. 54(d)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................i**Error! Bookmark not defined.**

INTRODUCTION .......................................................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF RELEVANT FACTS ...................................................................................2

THE INSTANT FEE REQUEST.............................................................................................2

ARGUMENT ...........................................................................................................................3

> POINT I
>
> PLAINTIFFS ARE PREVAILING PARTIES AND THEREFORE THEY
> ARE ENTITLED TO RECEIVE THEIR REQUESTED ATTORNEYS'
> FEES ............................................................................................................................3
>
> POINT II
>
> THE   AMOUNT   OF   ATTORNEYS'   FEES   PLAINTIFF   HAS
> REQUESTED IS REASONABLE ..................................................................................11
>
> POINT III
>
> THE HOURLY RATES REQUESTED BY PLAINTIFFS' COUNSEL
> ARE REASONABLE.......................................................................................................14

CONCLUSION.........................................................................................................................18

# TABLE OF AUTHORITIES

## U.S. Supreme Court Cases

Page

Blum v. Stenson,
   465 U.S. 886 (1984) .................................................................................. 17, 19, 20

Carey v. Piphus,
   435 U.S. 247 (1978) .................................................................................. 11

Farrar v. Hobby,
   506 U.S. 103 (1992) .................................................................................. 8, 12

Hensley v. Eckerhart,
   461 U.S. 424 (1983) .................................................................................. 7

Missouri v. Jenkins,
   491 U.S. 274 (1989) .................................................................................. 7

Newman v. Piggie Park Enterprises,
   390 U.S. 400 (1968) .................................................................................. 6

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,
   478 U.S. 546 (1986) .................................................................................. 7

Perdue v. Kenny A.,
   130 S. Ct. 1662 (2010) .............................................................................. 7, 17

## Federal Cases

Arbor Hill Concerned Citizens v. City. of Albany,
   522 F.3d 182 (2d Cir. 2008) ....................................................................... 7

Barbour, et al. v. City of White Plains, et al.,
   788 F.Supp.2d 216 (S.D.N.Y. 2011) ......................................................... 7, 19

Barfield v. New York City Health and Hospitals Corp.,
   2006 U.S. Dist. LEXIS 56711 (Aug. 11, 2006 S.D.N.Y.) ......................... 14, 18

Brandau v. Kansas, 168 F.3d 1179 (10th Cir.) ................................................ 10, 12

Cabrera v. Jakabovitz,
   24 F.3d 372 (2d Cir. N.Y. 1994) ............................................................... 8, 10

DeCurtis v. Upward Bound Int'l,
   2011 U.S. Dist. LEXIS 114001 (S.D.N.Y. Sept. 27, 2011)..................................................... 19

Diaz-Rivera v. Rivera-Rodriguez,
   377 F.3d 119 (1st Cir. 2004)................................................................................................... 12

Diplomatic Man, Inc. v. Nike, Inc.,
   2009 WL 935674 (S.D.N.Y. Apr. 7, 2009)............................................................................... 20

Foster v. Kings Park School Dist.,
   174 F.R.D. 19 (E.D.N.Y. 1997)................................................................................................. 7

GAKM Res. LLC v. Jaylyn Sales Inc.,
   2009 WL 2150891 (S.D.N.Y. July 20, 2009) .......................................................................... 20

Gierlinger v. Gleason,
   160 F.3d 858 (2d Cir.1998)..................................................................................................... 18

Grant v. Martinez,
   973 F.2d 96 (2d Cir. 1992)...................................................................................................... 16

Henry v. Webermeier,
   738 F.2d 188 (7th Cir. 1984) .................................................................................................. 16

Interfaith Comm'ty Org. v. Honeywell,
   426 F.3d 694 (3d Cir. 2005).................................................................................................... 19

Isabel v. City of Memphis,
   404 F.3d 404 (6th Cir. 2005) .................................................................................................. 16

Johnson v. Georgia Highway Express, Inc.,
   488 F.2d 714 (5th Cir. 1974) .................................................................................................... 9

Kerr v. Quinn,
   692 F.2d 875 (2d Cir. 1982).................................................................................................... 12

Koopman v. Water District No. 1 of Johnson County,
   41 F.3d 1417 (10th Cir. 1994) .................................................................................. 10, 12, 13

Laudermilk v. Fordice,
   1997 U.S. Dist. LEXIS 18307 (N.D. Miss. Nov. 14, 1997) .................................................... 12

LeBlanc-Steinberg v. Fletcher,
   143 F.3d 748 (2d Cir. 1998).......................................................................................... 7, 12, 17

McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund,
   450 F.3d 91(2d Cir. 2006)....................................................................................................... 16

McGrath v. Toys "R" Us, Inc.,
   409 F.3d 513 (2d Cir. 2005)........................................................................ 8

Mercer v. Duke University,
   401 F.3d 199 (4th Cir. 2005) ................................................................... 12

Moreno v. County of Sacramento,
   534 F.3d 1106 (9th Cir. 2008) ................................................................. 16

Orchano v. Advanced Recovery, Inc.,
   107 F.3d 94 (2d Cir. 1997).......................................................................... 7

Otero v. Colligan,
   2006 U.S. Dist. LEXIS 44001 (D.Conn. June 28, 2006)....................... 11, 12, 13, 14

Oz Mgmt. LP v. Ozdeal Inv. Consultants, Inc.,
   2010 WL 5538552 (S.D.N.Y. Dec. 6, 2010) ........................................ 20

Pino v. Locascio,
   101 F.3d 235, 238-39 (2d Cir. 1996) ...................................................... 8

Quaratino v. Tiffany & Co.,
   166 F.3d 422 (2d Cir. 1999)................................................................... 7, 14

Rakovich v. Wade,
   602 F.Supp. 1444 (E.D.Wis. 1985) ....................................................... 16

Rozell v. Ross-Holst,
   576 F.Supp.2d 527 (S.D.N.Y. 2008)................................................... 17, 19

Schneider v. Colegio de Abogados de Puerto Rico,
   187 F.3d 30 (1st Cir. 1999) .................................................................... 12

Thomas v. Cooper Indus., Inc.,
   640 F.Supp. 1374 (W.D.N.C. 1986) ..................................................... 16

United States Football League v. National Football League,
   887 F.2d 408 (2d Cir. 1989)..................................................................... 7

Weisberg v. Coastal States Gas Corp.,
   1982 WL 1311 (S.D.N.Y. Jun.16, 1982) .............................................. 16

Wheeler v. Pataki,
   07-Civ-0892 (TJM) (TWD) (NDNY) ................................................... 13

## **State**

State of N.Y. ex rel. Harkavy v. Consilvio,
   7 N.Y.3d 607 (2006) ............................................................................................................ 15

State of N.Y. ex rel. Harkavy v. Consilvio,
   8 N.Y.3d 645 (2007) ............................................................................................................ 15

## **Federal Statutes**

42 U.S.C. § 1983 ............................................................................................................................ 4

42 U.S.C. § 1988 .................................................................................................................... passim

## **Rules**

Fed.R.Civ.P. 54(d) ........................................................................................................................ 3

**INTRODUCTION**

Plaintiffs, by their attorneys, respectfully submit this memorandum of law in support of their Application for Attorneys' Fees and Other Discretionary Costs Pursuant To 42 U.S.C. § 1988 And Fed.R.Civ.P. 54(d).  Plaintiffs' application at this time includes all work on this matter to the date of the instant application, and does not include whatever work will be necessary on reply (which will be submitted, accompanied with further time sheets, along with Plaintiffs' reply, once the work on the fee petition is completed).

Plaintiffs' counsel's respective time sheets are annexed as exhibits to their respective Declarations, which are submitted along with this Memorandum of Law in support of the instant application.  Plaintiffs' counsel's expense sheet is annexed to the Declaration of Ameer Benno. See Declaration of Jeffrey A. Rothman (time sheet annexed as Exhibit E thereto); Declaration of Ameer Benno (time sheet annexed as Exhibit B thereto; all Plaintiffs' counsel's expense sheet annexed as Exhibit C thereto); Declaration of Reza Rezvani (time sheet for himself annexed as Exhibit A thereto, and time sheet for intern Aaron Goldblum annexed as Exhibit B thereto); Declaration of David Roth (time sheet for himself and paralegals on his staff annexed as Exhibits A, F, and G thereto); Declaration of Matthew Walters (time sheet annexed as Exhibit A thereto); Declaration of Brian Doyle (time sheet annexed as Exhibit A thereto); Declaration of Richard Sullivan (time sheet annexed as Exhibit A thereto).

**PRELIMINARY STATEMENT**

As this Court is aware, these were six related, consolidated actions brought pursuant to 42 U.S.C. § 1983, challenging plaintiffs' involuntary commitments to psychiatric hospitals pursuant to the Sexually Violent Predator Initiative ("SVP Initiative") that was put into effect under the administration of former New York State Governor George Pataki.  The complaints in these actions were filed in 2008, and the case has been heavily litigated through, inter alia: motions to

dismiss on the pleadings, motion for judgment on the pleadings and to strike affirmative defenses, intensive and voluminous discovery (with many motions made during the course of discovery), voluminous cross-motions for summary judgment, an interlocutory qualified immunity appeal to the Second Circuit, and a trial lasting 3 ½ weeks this past July.

Plaintiffs prevailed at trial against one of the Defendants, Sharon Carpinello, the former Commissioner of the New York State Office of Mental Health, who was found liable for depriving Plaintiffs of their procedural due process rights.  Each plaintiff was awarded $1 in nominal damages against defendant Carpinello, as the jury found for Ms. Carpinello on her affirmative defense as to damages.[1]  Judgment was entered in favor of all Plaintiffs against Ms. Carpinello on August 6, 2013.

## STATEMENT OF RELEVANT FACTS

Plaintiffs respectfully refer this Court to the Declarations submitted by the various counsel for the Plaintiffs in this matter, each of which contains additional information relevant to the instant application, such as their respective backgrounds and experience, their respective hourly rates, how they each got involved in this litigation, their work on the litigation, and their respective hours.

## THE INSTANT FEE REQUEST

Plaintiffs seek compensation as attorneys' fees to date in the following amounts:

| Attorney | Time Spent (hours) | Rate (per hour) | Discounted Lodestar (lodestar discounted by 15% in the exercise of billing judgment) |
|---|---|---|---|
| David Roth | 166.29 | $600 | $84,807.90 |
| Richard Gross | 73.1 | $600 | $37,281.00 |
| Ameer Benno | 2,724.9 | $550 | $1,273,890.80 |
| Reza Rezvani | 2,446.3 | $550 | $1,143,645.00 |

---

[1]  Plaintiffs challenge this conclusion, and have raised it in their current appeal to the Second Circuit.

| | | | |
|---|---|---|---|
| Jeffrey Rothman | 776.5 | $550 | $363,013.75 |
| Richard Sullivan | 95 | $425 | $34,318.75 |
| Matthew Walters | 100.7 | $375 | $32,098.13 |
| Brian Doyle | 393.8 | $225 | $75,314.25 |
| Aaron Goldblum | 339.9 | $150 | $42,572.00 |
| Diane Clemendor | 59.6 | $100 | $5,066.00 |
| Wilma Velez | 9.3 | $100 | $790.50 |
| Cierra Lomax | 10.0 | $50 | $425.00 |
| **TOTAL:** | 7,195.39 | --------- | $3,093,223.08 |

Plaintiffs also seek to recoup their out-of-pocket expenses, in the amount of $157,519.28 (see Exhibit C to the Declaration of Ameer Benno, which itemizes all Plaintiffs' counsel's expenses).

## ARGUMENT

### POINT I

**PLAINTIFFS ARE PREVAILING PARTIES AND THEY THEREFORE ARE ENTITLED TO RECEIVE THEIR REQUESTED ATTORNEYS' FEES**

42 U.S.C. § 1988 provides in relevant part:

> In any action or proceeding to enforce a provision of section … 1983 of this title … the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ….

A successful plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Newman v. Piggie Park Enterprises, 390 U.S. 400, 402 (1968). In light of the Judgment obtained against Defendant Carpinello, and the significant public benefit obtained through the litigation of this action, which has generated

3

important published decisions of this Court and the Second Circuit vindicating the constitutional rights of the most despised members of our society, Plaintiffs are prevailing parties and should be awarded fees under § 1988.

The traditional methodology for calculating an award of attorney's fees is the "lodestar" method. A "lodestar," i.e., the presumptively reasonable fee, is "arrived at by multiplying 'the number of hours reasonably expended on the litigation … by a reasonable hourly rate.'" LeBlanc-Steinberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).[2]   A reasonable hourly rate is

> one calculated on the basis of rates and practices prevailing in the market, i.e., in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation, and one that grants the successful civil rights plaintiff a fully compensatory fee, comparable to what is traditional with attorneys compensated by fee-paying clients.

Foster v. Kings Park School Dist., 174 F.R.D. 19, 26-27 (E.D.N.Y. 1997) (quoting Missouri v. Jenkins, 491 U.S. 274, 286 (1989)).

There is explicitly no rule of proportionality in fee-shifting cases, which would be entirely contrary to Congress' purpose in enacting Section 1988 to encourage attorneys to take on civil rights cases as private attorneys general to vindicate constitutional rights.  See, e.g., Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation"); see also United States Football League v. National Football League, 887 F.2d 408, 414-15 (2d Cir. 1989) (approving fee award of $5.5 million following antitrust plaintiff's recovery of one dollar, trebled to three dollars, in damages).

---

[2] See Barbour, et al. v. City of White Plains, 788 F.Supp.2d 216 (S.D.N.Y. 2011), which discusses the Second Circuit's decision in Arbor Hill Concerned Citizens v. City. of Albany, 522 F.3d 182 (2d Cir. 2008), and the United States Supreme Court's holding in Perdue v. Kenny A., 130 S. Ct. 1662, 1669 (2010), which "reaffirmed the utility of the lodestar approach to evaluate the reasonableness of fee applications in the § 1988 context."

A prevailing party, such as each of the plaintiffs herein, is generally entitled to recover his or her attorney's lodestar. "There is "a 'strong presumption' that the lodestar figure represents a reasonable fee." Quaratino, 166 F.3d at 425 (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986) and Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 99 (2d Cir. 1997)).

To the extent that Defendants will argue, as per Farrar v. Hobby, 506 U.S. 103 (1992), that Plaintiffs' counsel should be denied recovery of their fees and costs because the $1 in nominal damages that each Plaintiff obtained represents an insufficient degree of success, those arguments should be rejected. Where a judgment of nominal damages is obtained in a case that has vindicated important constitutional rights and served a significant public purpose, an award of attorneys' fees is warranted. See McGrath v. Toys "R" Us, Inc., 409 F.3d 513 (2d Cir. 2005), which recognized the "public purpose exception" to the general Farrar rule that attorneys' fees not be awarded where only nominal damages are obtained:

> Under our court's precedents, an "award of fees" to a plaintiff recovering nominal damages "will be rare," appropriate only when a plaintiff's success relies on a "new rule of liability that serve[s] a significant public purpose." Pino v. Locascio, 101 F.3d at 238-39; see also Cabrera v. Jakabovitz, 24 F.3d at 393. As we explained in Pino, "the vast majority of civil rights litigation does not result in ground-breaking conclusions of law," and will warrant fee awards only "if a plaintiff recovers some significant measure of damages or other meaningful relief." Id.

McGrath, 409 F.3d at 518. The McGrath Court went on to discuss the propriety of attorneys' fees in that case under New York law, and neither considered nor addressed "whether the broader definition of public purpose articulated by the [New York State] Court of Appeals would also properly inform an analysis of attorney's fee awards under federal law." McGrath, 409 F.3d at 520, fn. 7.

In the matter at bar, there can be no doubt that a significant public purpose has been served through these cases, and that this is one of the rare circumstances warranting fees where nominal damages have been obtained.  The Pataki administration engaged in unprecedented misconduct when it – through an executive initiative, and in the absence of a specific authorizing statute (which is the only mechanism through which civil psychiatric commitments of imprisoned sex offenders had been accomplished previously) -- put in place the SVP Initiative and applied it to Plaintiffs in this case.  Although Plaintiffs' counsel were always of the view that these actions were in violation of clearly established constitutional law, given the uniqueness of the circumstances under which the rights violations arose, and the complexity of the law at issue in these cases under such novel circumstances, and the increasing (and problematic) expansiveness of the application of the qualified immunity doctrine by courts around the country, there was always the distinct danger that defendants would escape from liability under the qualified immunity doctrine.[3]  The risk of losing on liability in this case was magnified by the fact that all defendants were employees of New York State, and so there could be no Monell policy and practice liability (which can be obtained against municipalities) due to the 11th Amendment.  Further, of course, the status of our clients, who had all been convicted of very serious sexual felonies involving lurid and repulsive acts, heightened the risk of a loss on liability, or, as occurred at trial, an award of only nominal damages.[4]

---

[3] Defendants in this case, of course, vigorously argued throughout every stage of this litigation that they were entitled to dismissal of the cases on the basis that 1) no constitutional violation had occurred, and 2) if it had, they were entitled to qualified immunity from liability.

[4] One of the oft-cited factors for evaluating a fee award is "the 'undesirability' of the case." Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).  As discussed, this case plainly had many aspects that would make it "undesirable" to many attorneys.  Nonetheless, Plaintiffs' counsel (as elaborated in our Declarations submitted along with the instant application) all decided that it was a righteous cause, and we all decided to commit ourselves to this case and to do the long and hard work reasonably necessary to advance it to victory.  This factor particularly militates in favor of our recovery of our full requested fees.

The important decisions obtained by Plaintiffs' counsel from this Court and the Second Circuit during the course of this litigation -- in conjunction with the judgment against defendant Carpinello, a high-level government official -- have served the significant public purpose of vindicating the fundamental constitutional rights of some of the most despised members of our society.  The judgment obtained in this case, making real that high ranking government officials cannot act with impunity, even toward the pariahs of society, will serve to deter future violations of fundamental constitutional rights by executive officials going forward.  Also, Defendants asserted on multiple occasions throughout this litigation that the State of New York had, since time immemorial (indeed, well before the SVP Initiative was conceived of) violated the constitutional rights of its citizens by routinely civilly committing prisoners in state custody to state-operated psychiatric facilities involuntarily at the conclusion of their sentences without affording them the procedures required by our Constitution.  The judgment obtained by Plaintiffs against Defendant Carpinello in this litigation serves as a clear statement, and warning, that such actions by the state are unlawful.  See, e.g., Cabrera v. Jakabovitz, 24 F.3d 372 (2d Cir. 1994):

> The fact that plaintiffs obtained only one dollar in damages from Breitman does not automatically exempt him from paying any share of plaintiffs' attorney's fees. See [Farrar] at 578 (O'Connor, concurring) ("An award of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved."). Here, the plaintiffs prevailed on a significant legal issue -- namely, that landlords can be held liable for employing real estate brokers who are engaged in racial steering. One does not search "in vain for the public purpose" this litigation has served. Id. That purpose is readily apparent: Breitman's loss in this case serves as a clear warning to landlords that the law will not tolerate their use of brokers who discriminate invidiously.

Cabrera, 24 F.3d at 393; see also Koopman v. Water District No. 1 of Johnson County, 41 F.3d 1417, 1420-21 (10th Cir. 1994) (holding that attorney's fees should be awarded to a discharged public employee who received only nominal damages on his procedural due process claim

because the district was now on notice that it had to provide employees with constitutionally adequate pre-termination and post-termination hearings); Brandau v. Kansas, 168 F.3d 1179, 1183 (10th Cir.) (awarding attorney's fees to a plaintiff, who recovered only nominal damages in a Title VII case, because her victory put the state on notice that it should reform its policies, thereby vindicating the rights of all state employees).

The Supreme Court has also placed particular emphasis on the vital importance of upholding procedural due process rights, even in the absence of proof of actual damages. Discussing the importance of procedural due process protections, and awarding attorneys' fees following an award of nominal damages, the District Court in Otero v. Colligan, 2006 U.S. Dist. LEXIS 44001 (D.Conn. June 28, 2006)(Garfinkle, M.J.) held as follows:

> The instant case presented a legal scenario similar to that in Carey v. Piphus, 435 U.S. 247, 266, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978), an action brought by public school students against school officials, who had suspended them from school without procedural due process. The Supreme Court held that, even if the students' suspensions were justified and even if they did not suffer any actual injury, the students were entitled to an award of nominal damages. "Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to an organized society that procedural due process be observed, . . . the denial of procedural due process should be actionable for nominal damages without proof of actual injury." Id. (internal citations omitted).
>
> Thus, in this case, after finding that Sgt. Otero's constitutional right to procedural due process had been violated, but that Sgt. Otero has not carried his burden of proving that this violation was the proximate cause of his actual injuries, the Court awarded him nominal damages of $ 1.00. Additionally, citing Farrar, the Court held that, as the prevailing party, Sgt. Otero was "entitled" to an award of attorney's fees and costs under 42 U.S.C. § 1988.

Otero, 2006 U.S. Dist. LEXIS 44001 at *2-3.  Because the plaintiff in Otero "was successful in all respects except as to the relief awarded by this Court," Id. at *7, the court awarded significant

8

fees (90% of the lodestar).  The <u>Otero</u> Court also noted, citing the Second Circuit's decision in

<u>Cabrera</u>, that the case (as does the case at bar) "presented novel legal issues and served an

important public purpose."  <u>Id</u>.  The <u>Otero</u> decision also collects cases from a number of other

circuits where the "public interest exception" to the <u>Farrar</u> general rule has been invoked by

courts to award attorneys' fees in procedural due process cases where an award of nominal

damages has been obtained.[5]  The court in <u>Otero</u> continued as follows:

> Significantly, Sgt. Otero's case involved the deprivation of his right
> to procedural due process, a constitutional right that the Supreme
> Court has characterized as "absolute" in the "sense that it does not
> depend upon the merits of the claimant's substantive assertions,"
> and a right that is actionable without proof of actual damages.
> <u>Carey</u>, 435 U.S. at 266. While it is true that Sgt. Otero was not
> successful in obtaining instatement to the position of lieutenant or
> monetary damages for the pay differential between his position of
> sergeant and the promotional position that he sought, he did prevail
> on his one and only claim and vindicated an important
> constitutional right to procedural due process not only for himself
> but for all City employees.

---

[5] <u>Otero</u> cites to, at *7-8:  <u>Laudermilk v. Fordice</u>, 1997 U.S. Dist. LEXIS 18307, at *11 (N.D. Miss. Nov. 14, 1997) (awarding attorney's fees to plaintiffs who were successful on their constitutional procedural due process claim, but who received only nominal damages, because even if they had been afforded a hearing, the result would have been the same); <u>Mercer v. Duke University</u>, 401 F.3d 199, 203-04 (4th Cir. 2005) (Applying the three factors from Justice O'Connor's concurrence [in <u>Farrar v. Hobby</u>, i.e. "'the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served"] to "help separate the usual nominal-damage case, which warrants no fee award, from the unusual case that does warrant an award of attorney's fees," the Court upheld a § 1988 fee award to the plaintiff because she established a significant legal purpose that served the public interest.); <u>Diaz-Rivera v. Rivera-Rodriguez</u>, 377 F.3d 119, 125 (1st Cir. 2004) (holding that terminated public employees who prevailed on their procedural due process claims but recovered only nominal damages were entitled to an award of attorney's fees because the court's determination that the municipality violated plaintiffs' constitutional rights represented a significant legal conclusion serving an important public purpose); <u>Schneider v. Colegio de Abogados de Puerto Rico</u>, 187 F.3d 30, 32, 42 (1st Cir. 1999) (awarding legal fees under § 1988 where a prevailing plaintiff's nominal damage award provided a vindication of significant constitutional rights); <u>Koopman v. Water District No. 1 of Johnson County</u>, 41 F.3d 1417, 1420-21 (10th Cir. 1994) (holding that attorney's fees should be awarded to a discharged public employee who received only nominal damages on his procedural due process claim because the district was now on notice that it had to provide employees with constitutionally adequate pre-termination and post-termination hearings); <u>Brandau v. Kansas</u>, 168 F.3d 1179, 1183 (10th Cir.) (awarding attorney's fees to a plaintiff, who recovered only nominal damages in a Title VII case, because her victory put the state on notice that it should reform its policies, thereby vindicating the rights of all state employees).

> Attorney's fees are authorized by § 1988 for prevailing civil rights plaintiffs in order "to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982). This Court does not believe that this is the kind of case that Farrar intended to discourage attorneys from taking.  Nor does this Court believe that Sgt. Otero and his counsel should be required to bear the entire cost of battling the City's unconstitutional practice. See Koopman [v. Water District No. 1], 41 F.3d at 1421 [(10th Cir. 1994)].  "Deterring meritorious lawsuits on constitutional issues because they offer a small likelihood of a significant money judgment presents as grave a danger to our legal system as frivolous litigation." Id.

Otero, 2006 U.S. Dist. LEXIS 44001 at *9-11.

It must also be noted that because there was no meaningful opportunity in this case to obtain prospective declaratory or injunctive relief, as the SVP Initiative was terminated following the habeas corpus decisions by the New York State Court of Appeals in State ex rel Harkavy v. Consilvio, 7 N.Y.3d 607 (2006) and State of N.Y. ex rel. Harkavy v. Consilvio, 8 N.Y.3d 645 (2007), a finding of liability in a Section 1983 action was the only available mechanism to obtain a holding that the SVP Initiative violated the federal constitution, and to hold specific government officials liable for it.  Significantly, the Harkavy decisions were decided on the basis on New York State law, and the decisions by this Court and the Second Circuit in the instant action are the only decisions by any court, to Plaintiffs' knowledge, holding that the SVP Initiative -- and the involuntary civil commitment of inmates under Article 9 of the Mental Hygiene Law at the conclusion of their prison sentences, which New York State officials claimed, throughout the course of this litigation, to have been routine state practice for decades -- violated clearly established state and federal law.  Plaintiffs' counsel have thus obtained ground-

10

breaking conclusions of law in these cases, and achieved a significant public purpose through this litigation[6], and an award of attorneys' fees and costs is therefore warranted.


POINT II

THE AMOUNT OF ATTORNEYS' FEES AND LITIGATION EXPENSES PLAINTIFF HAS REQUESTED IS REASONABLE

All of the work done on this case was part of a common core of facts, and inextricably intertwined throughout plaintiffs' counsel's vigorous and diligent efforts to achieve both liability and damages, and thus we respectfully submit that we would be justified in requesting our full lodestar in these actions.  In the exercise of billing judgment, however, Plaintiffs' counsel are voluntarily reducing their fees across the board by 15%, and respectfully submit that we should be awarded the full requested fees for all of the work expended on this litigation.  As Your Honor has noted:

> fees may be awarded for unsuccessful claims as well as successful ones . . . where they are inextricably intertwined and involve a common core of facts or are based on related legal theories." Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (internal quotation marks omitted). Here, plaintiff's unsuccessful motion for a collective action and her successful motion for summary judgment both involved a "common core of facts" and a "related legal theory."

Barfield v. New York City Health and Hospitals Corp., 2006 U.S. Dist. LEXIS 56711, at *6 (Aug. 11, 2006 S.D.N.Y.) (Rakoff, J.), aff'd 537 F.3d 132, 139 (2d Cir. 2008).  To the extent that opposing counsel may argue that some of our work submitted with the instant fee application is only attributable to unsuccessful claims or damages issues, such argument by Defendants should

---

[6] The judgment against Defendant Carpinello will also likely collaterally estop her from contesting liability on plaintiffs' procedural due process claims in other litigation against her that has been brought by Plaintiffs' counsel herein on behalf of other sex offenders who were civilly committed pursuant to the SVP Initiative, such as in the putative class action currently being litigated in the Northern District of New York, Wheeler v. Pataki, 07-Civ-0892 (TJM) (TWD).  This represents yet another significant public purpose achieved through this litigation.

be rejected, as all the work done in this case arose from a common core of facts, and was reasonably calculated at the time it was engaged in both to proving Defendants' liability and to establishing Plaintiffs' damages.  See, e.g., Otero v. Colligan, 2006 U.S. Dist. LEXIS 44001, at *20 ("The relief portion of [the plaintiff's] case was inextricably intertwined with the liability portion").  In any event, our voluntary 15% reduction to our fees more than amply encompasses any such time spent, or any time that the Court may consider to have been unnecessarily duplicative.

As discussed in the Declarations of Plaintiffs' counsel submitted herewith, Plaintiffs' counsel divided up work efficiently and attempted as much as possible to avoid redundant work. Some overlap in work, however, was of course necessary and indeed advantageous.  The Attorney General's office throughout the litigation (and, shortly before and during the trial of this action, Chadbourne & Parke as well) threw tremendous resources into defending this case, and it was necessary for us to put more than one lawyer (as opposing counsel often did) on, for example, important depositions and motion practice, in order to meet the challenges presented to us.  We were out-resourced at every stage of the case, but still were able to achieve multiple interim victories along the way, and to ultimately prevail following trial.  It was also important that the various members of our team be apprised of the issues and developments that affected the litigation of the case, as the case proceeded.  It was also necessary for us to exchange drafts of documents, and to collaboratively edit each other's work, which enabled us to be up to speed on the essential issues and developments in the case, and to create an optimal final product.

Plaintiffs' counsel should therefore be awarded our full requested fee by this Court. Plaintiffs' counsel worked exceedingly hard on this case, over many years, and developed it well and pressed it diligently and skillfully.  Any reduction in hours beyond the 15% that we are voluntarily reducing from our lodestar in the exercise of billing judgment would be unjust and

contrary to the principles underlying 42 U.S.C. § 1988.  The hours spent on this matter were entirely reasonable, and should be compensated as requested.[7]

Further, and in anticipation of Defendants' expected argument about our engagement in so-called clerical or paralegal functions, there is significant authority that solo practitioners (almost all of Plaintiffs' counsel are solo practitioners, without any support staff) are entitled to bill at their regular hourly rates when they do such tasks themselves.[8]  Whenever possible, we

---

[7] "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."  Moreno v. County of Sacramento, 534 F.3d 1106 (9th Cir. 2008); see also Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (the defendant's argument "succeeds only if we were to engage in an ex post facto determination of whether attorney hours were necessary to the relief obtained. The relevant issue, however, is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures").

[8] See McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 97 n. 6 (2d Cir. 2006) ("declining to parse out attorneys' work based on whether it could have been done by an associate or paralegal, because the attorneys were solo practitioners") (citing Weisberg v. Coastal States Gas Corp., 1982 WL 1311, *2 n. 1 (S.D.N.Y. Jun.16, 1982).  See also Isabel v. City of Memphis, 404 F.3d 404, 416 (6th Cir. 2005) ("The City argues that the rate should be adjusted downward based on numerous listed tasks which could have been performed at a lower hourly rate.  Plaintiffs' lawyer, however, is a solo practitioner who does not operate with the assistance of paralegals or support staff …. This Court has stated that a reduction in attorney fees is to be applied only in rare and exceptional circumstances …. This is not one of those rare and exceptional cases when a reduced award is justified") (internal citations omitted); Rakovich v. Wade, 602 F.Supp. 1444, 1451 (E.D.Wis. 1985) ("Defendants also argue that some of the work itemized in Mr. Bohren's affidavit could have been performed by a legal secretary. They refer to instances where Mr. Bohren traveled to the court to file papers. Mr. Bohren's affidavit discloses that this occurred four times.  That is not a substantial amount, but more importantly, it is common for attorneys in this district to file documents in person, even among large firms that employ messengers. Mr. Bohren's fee request will not be trimmed back in this respect"); Thomas v. Cooper Indus., Inc., 640 F.Supp. 1374, 1380 (W.D.N.C. 1986) ("On the question of discounting Mr. Daly's time, it is worth noting that he a solo practitioner.  Unlike the defendants' lawyers, he cannot delegate matters to lesser-paid employees.  It would be improper to penalize him for being a solo practitioner by discounting his time on certain matters that might, in different circumstances, be performed by 'office personnel'"); Henry v. Webermeier, 738 F.2d 188, 194 (7th Cir. 1984) ("When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling.  That is why lawyers invariably charge their clients for travel time, and usually at the same rate they charge for other time …. And if they charge their paying clients for travel time, they are entitled to charge the defendants for that time in a case such as this where the plaintiffs have shown a statutory right to reasonable attorneys' fees").

attempted to use the paralegals at Roth & Roth (whose time records are annexed to the Declaration of David Roth) for clerical and administrative tasks, but at times, given particular exigencies that arose, it was necessary for those tasks to be done by the various attorneys on our team.

Litigation expenses for which Plaintiffs' counsel seek reimbursement total $157,519.28. These expenses are itemized, explained, in our expense sheet, which is attached as Exhibit C to the accompanying Declaration of Ameer Benno dated September 30, 2013.[9]

POINT III

THE HOURLY RATES REQUESTED BY PLAINTIFFS'<br>COUNSEL ARE REASONABLE

Each of Plaintiffs' counsel has submitted his own declaration in support of his requested hourly rate, providing his relevant experience.  Some of us have also annexed declarations from other experienced practitioners, attesting to the reasonableness of that counsel's requested rate.[10] Plaintiffs' counsel's respective Declarations further describe the considerable work Plaintiffs' counsel has done, most of us as solo practitioners.

Plaintiffs' counsel's rates are therefore entirely in line with prevailing market rates.[11] Indeed, our rates are significantly lower than the rates charged by attorneys in many New York

---

[9]  Although expenses for photocopying is chargeable in a § 1988 fee application, see, e.g., Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987); Aston v. Secretary of Health and Human Services, 808 F.2d 9, 12 (2d Cir. 1986), Plaintiffs' counsel is not seeking reimbursement of the thousands of pages of in-house photocopies made.

[10]  Annexed to the Declaration of Jeffrey Rothman are Declarations in support by Ronald L. Kuby, James I. Meyerson, Jonathan Moore, and Matthew D. Brinckerhoff.  Annexed to the Declaration of Ameer Benno are Declarations in support by Myron Beldock, Matthew D. Brinckerhoff, Edward Sivin, and Glenn Miller.  Annexed to the Declaration of Reza Rezvani are Declarations in support by Stefan H. Krieger and Stephen Chakwin.

[11]  Plaintiffs' counsel have billed for all of our time spent over the course of this protracted litigation at our current respective rates.  See LeBlanc-Steinberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998) ("Current rates, rather than historical rates, should be applied in order to compensate for the delay in payment."); Rozell v. Ross-Holst, 576 F. Supp.2d 527, 545 (S.D.N.Y. 2008)(Francis, M.J.) ("current

City law firms.  The National Law Journal's 2012 nationwide survey of prevailing market rates for attorneys demonstrates that $550 per hour is well within the range of "prevailing market rates in the relevant community."  See Perdue v. Kenny A., 130 S. Ct. 1662, 1672 (2010) (quoting Blum v. Stenson, 465 U.S. 886, 895 [1984]) (see ¶ 23 of the Declaration of Jeffrey Rothman, and Exhibit F annexed thereto).  The "relevant community" in this case is the Southern District of New York.  The New York firms listed in that survey break down as follows: DLA Piper partners billed within the range of $550-$1200 per hour, with the median being $775 per hour. Associates at DLA Piper billed within the range $335-$760, with the median being $530 per hour.  Epstein, Becker & Green partners billed within the range of $330-$750 per hour, with the median being $535 per hour.  Associates at that firm billed within the range $215-$455 per hour, with the median being $330 per hour.  Kelley Drye & Warren partners billed within the range of $450-$950 per hour, with the median being $660 per hour, and associates there billed within the range of $285-$600 per hour, with the median being $450 per hour.  Shulte Roth & Zabel partners billed within the range of $785-$995 per hour, with the median being $895 per hour, and associates at that firm billed within the range of $295-$705 per hour, with the median being $585 per hour.  The National Law Journal survey does not cover all law firms, and it is well known among attorneys at law firms in New York that many of the firms with the highest rates do not respond to the survey.  See also Barfield, 2006 U.S. Dist. LEXIS 56711:

> As to attorney's fees, defendants contend, first, that the billing rate of plaintiff's attorney, i.e., $350/hour, exceeds the market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir.1998) (internal quotation marks omitted). They argue instead that the proper rate should be, at most, $200/hour because plaintiff's counsel, having

---

rather than historic rates should be utilized to account for the delay between the date services were rendered and when fees can be recovered").

been admitted to the bar just five years ago, is comparable to a mid-level associate in a large law firm. However, this analysis ignores the considerable experience plaintiff's counsel has acquired as a solo practitioner, working primarily in the areas of wage and hour litigation over the past five years. Further, even assuming, arguendo, that defendants' comparison were here appropriate, a number of large New York firms bill the time of their fifth-year associates at between $300-$400/hour. *See* Billing Rates for Junior and Senior Associates, The National Law Journal (Dec.2004), at http://www.law.com/jsp/article.jsp?id=1102340171889.

Accordingly, the Court finds the rate requested by plaintiff's counsel to be fully reasonable for counsel of his skill and experience.

Id. at *1-2.[12]

Also of relevance, and annexed as Exhibit G to the Rothman Declaration, is a printout of the "Laffey Matrix" (www.laffeymatrix.com), which is an accepted tool for establishing hourly rates for attorneys in the Washington, D.C.-Baltimore area.  See, e.g., Interfaith Comm'ty Org. v. Honeywell, 426 F.3d 694, 708-09 (3d Cir. 2005).  The Laffey Matrix lists the following current rates: $175 per hour for paralegals; $320 per hour for lawyers 1-3 years out of law school; $393 per hour for lawyers 4-7 years out of law school; $567 per hour for lawyers 8-10 years out of law school; $640 per hour for lawyers 11-19 years out of law school; and $771 per hour for lawyers with 20-plus years out of law school.

A body of case law from civil rights cases in this district supports Plaintiffs' counsel's requested rates, as well.  See Rozell v. Ross-Holst, 576 F.Supp.2d 527, 546 (S.D.N.Y. 2008) (Francis, M.J.)(awarding two experienced civil rights attorneys hourly rates of $600); see also the May 24, 2011 Opinion and Order of Hon. Judge Patterson in Barbour, et al. v. City of White

---

[12]   It has been reported in the New York Daily News politics blog (viewable at http://www.nydailynews.com/blogs/dailypolitics/2013/08/lawsuit-against-ex-gov-george-pataki-will-cost-taxpayers-up-to-525-an-hour-in-) that the New York State Attorney General's office has agreed to pay the attorneys from Chadbourne & Parke at the rate of $525 per hour for partners, $400 an hour for associates, and $125 per hour for paralegals, for their defense of Governor Pataki in this case.  See August 5, 2013 blog entry by Daily News reporter Ken Lovett, "Lawsuit Against Ex-Gov. George Pataki Will Cost Taxpayers Up To $525 An Hour In Legal Fees," annexed as Exhibit H to the Rothman Declaration.

Plains, et al., 788 F.Supp.2d 216 (S.D.N.Y. 2011), holding that the requested rate [$625 per hour] for civil rights plaintiffs' attorney Michael Spiegel, Esq., was reasonable); DeCurtis v. Upward Bound Int'l, 2011 U.S. Dist. LEXIS 114001 at *22-25 (S.D.N.Y. Sept. 27, 2011) (attorney with 16 years of experience awarded an hourly rate of $550).[13]

The rates requested are also consistent with rates awarded in this district to litigators in practice areas other than civil rights, such as copyright, which is supposed to be the measure for civil rights attorneys as well. See Blum v. Stenson, 465 U.S.at 895-96 & n. 11 (requiring courts to examine the "prevailing market rates in the relevant community" for "similar services by lawyers of reasonably comparable skill, experience and reputation"). In non-civil rights cases, such as copyright and trademark cases, experienced and well-reputed lawyers have received hourly rates above $600. See GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, *7–8 (S.D.N.Y. July 20, 2009) (approving $650 hourly rate for partner in trademark case and $525 hourly rate for an attorney at a national law firm with eleven years' experience in trademark infringement case); see also Oz Mgmt. LP v. Ozdeal Inv. Consultants, Inc., 2010 WL 5538552, *3 (S.D.N.Y. Dec. 6, 2010) (approving "discounted rate [of $657] as within the range of rates for law firm partners in the New York City area with significant intellectual property law

---

[13] The rates requested are also consistent with rates charged by litigators in practice areas other than civil rights, such as copyright, which is supposed to be the measure for civil rights attorneys as well. See Blum v. Stenson, 465 U.S. 886, 895-96 & n. 11 (1984) (requiring courts to examine the "prevailing market rates in the relevant community" for "similar services by lawyers of reasonably comparable skill, experience and reputation"). In non-civil rights cases, such as copyright and trademark cases, experienced and well-reputed lawyers have received hourly rates above $600. See GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, *7–8 (S.D.N.Y. July 20, 2009) (approving $600 to $650 hourly rate for intellectual property attorneys at a national law firm with twenty to thirty years' experience, and $525 hourly rate for an attorney at a national law firm with eleven years' experience in trademark infringement case); see also Oz Mgmt. LP v. Ozdeal Inv. Consultants, Inc., 2010 WL 5538552, *3 (S.D.N.Y. Dec. 6, 2010) (approving "discounted rate [of $657] as within the range of rates for law firm partners in the New York City area with significant intellectual property law experience"), report and recommendation adopted, 2011 WL 43459 (S.D.N.Y. Jan.5, 2011); GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, *8 (S.D.N.Y. July 20, 2009) (approving $650 hourly rate for partner in trademark case); Diplomatic Man, Inc. v. Nike, Inc., 2009 WL 935674, *5 (S.D.N.Y. Apr. 7, 2009) (awarding $ 650 per hour to partners).

experience"), <u>report and recommendation adopted</u>, 2011 WL 43459 (S.D.N.Y. Jan.5, 2011);

<u>Diplomatic Man, Inc. v. Nike, Inc.</u>, 2009 WL 935674, *5 (S.D.N.Y. Apr. 7, 2009) (awarding

$650 per hour to partners).


## **CONCLUSION**

For the foregoing reasons, Plaintiffs' counsel should be awarded their requested fees and

costs.


Dated:       New York, New York
             September 30, 2013


                               Respectfully submitted,

                               _____/S/_____
                               Ameer Benno, Esq.
                               BENNO & ASSOCIATES P.C.
                               110 Wall Street, 11th Floor
                               New York, NY 10005
                               Tel.:  (212) 227-9300


                               _____/S/_____
                               JEFFREY A. ROTHMAN, Esq.
                               315 Broadway, Suite 200
                               New York, NY 10007
                               Tel.: (212) 227- 2980

                               Two of the Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of September, 2013, I filed the foregoing
MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION electronically through
the district court's CM/ECF system, which caused the following parties and counsel to be served
by electronic means, as reflected on the Notice of Electronic Filing generated by the CM/ECF
system:

       Office of New York State Attorney General
       Assistant Attorney General Barbara Hathaway
       Assistant Attorney General Rebecca Durden
       Assistant Attorney General Michael Albanese
       Attorneys for all Defendants other than Defendant Pataki

       Chadbourne & Parke LLP
       Abbe David Lowell
       Christopher D. Man
       Seth Michael Kruglak
       Benjamin David Bleiberg
       Attorneys for Defendant Pataki


               /S/
               Ameer Benno