IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH BAILEY, | 08-Civ-8563 (JSR) |
| CHARLES BROOKS, | 08-Civ-8665 (JSR) |
| SYLVIA TORRES, as Administratrix of the Estate of Jorge Burgos, Jr., | 08-Civ-8924 (JSR) |
| LOUIS MASSEI, | 08-Civ-8923 (JSR) |
| ROBERT TROCCHIO, | 08-Civ-8925 (JSR) |
| ROBERT WARREN, | 08-Civ-9609 (JSR) |

PLAINTIFFS

vs

GEORGE PATAKI, et al.,

DEFENDANTS

DECLARATION OF REZA REZVANI IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES AND OTHER DISCRETIONARY COSTS
PURSUANT TO 42 U.S.C. § 1988 AND FED.R.CIV.P. 54(d)(2)

REZA REZVANI, declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, as follows:

1. I, along with other members of our litigation team, represent the plaintiffs in these six consolidated actions. As such, I am familiar with the facts and circumstances concerning the prosecution of this action. I respectfully submit this declaration in support of plaintiffs' application, pursuant to 42 U.S.C. § 1988 and Fed.R.Civ.P. 54(d), for an order awarding plaintiffs' attorneys' fees and costs as the prevailing party in this litigation.

2. I first came on board to assist with this case in July of 2009, following the denial of Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). At that point

1

the case was being handled solely by Ameer Benno, who had been working on it as well when the case was with the firm of Shandell, Blitz, Blitz & Ashley, LLP, which dissolved at the end of June 2009. Recognizing the large amount of work necessary to litigate this complex and important case, Mr. Benno assembled a team of attorneys to work on the case with him.

3. At that point, Mr. Benno and I had known each other for approximately six months, and we had discussed and brainstormed many cases together. We quickly realized that we had a high level of personal and legal chemistry when it came to analyzing and strategizing cases together. Mr. Benno invited me to join the litigation team, in significant part because of the trial skills I have developed, and I enthusiastically accepted. When I became apprised as to the facts of this case, and I read this Court's decision denying defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I was appalled at the flagrant violation of Plaintiffs' fundamental constitutional rights.

4. I joined Mr. Benno and the rest of our team knowing that this case would be a long, hard struggle. This was certainly borne out during the course of the ensuing years of litigation, which involved, *inter alia*, voluminous discovery, involving significant motion practice and numerous depositions, voluminous cross-motions for summary judgment, and interlocutory qualified immunity appeal to the Circuit, and a 3 ½ week-long trial in July of 2013.

5. I was willing to come on board and devote large amounts of work to this case despite recognizing its obvious risks: e.g., the complexity and novelty of many of

the legal issues involved; the ever-present risk of qualified immunity (magnified in this case by the fact that all the defendants were employees of New York State, and so there could be no Monell municipal policy and practice liability due to the 11th Amendment) in this type of litigation; and, of course, the status of our clients, who had all been convicted of very serious sexual felonies.

6    Despite these risks, I was happy and proud to come on board and lend my efforts to this righteous cause. This court heard my opening statement and summation, which were delivered from the heart, so it knows how strongly I feel about the fundamental principles of due process at issue in this case.

7.    I agreed to take on the responsibility of being heavily involved in this case. This was a serious commitment and carried with it significant consequences, for my practice and my personal life. When I agreed to join the litigation team, my practice was devoted exclusively to serving as trial counsel to other firms who referred their cases to me to try. Thus, the only source of income for me at that time was to actually try cases. My decision to commit to this case, therefore, required me to accept the fact that I would not be able to try any cases during the discovery phase of this case, which consumed an enormous amount of time and energy. This decision was significant not only in the short term, but in the long term as well. In the short term, I would have no meaningful source of income, since all my income was derived from trying cases. In the long term, it would stunt the development of my practice because I would not be able to take on new trial referrals or try the cases that had been already been referred to me.

8. In maintaining my own practice, I am compensated based on a portion of any judgment or settlement. When deciding to take a case, I make my decision partially based on my ability to recover on contingency. Because the inherent risk in any civil rights case is high, and because of the risk that any civil rights case can become protracted with multiple, time and expense consuming layers of substantive and procedural complexity - both of which risks were heightened in the instant litigation - my decision to agree to devote myself to this case was dependent on the availability of a lodestar recovery in the event that we were able to prevail.

9. Given the importance of the legal issues in this case, and understanding the especially important need to protect the fundamental constitutional rights of the most despised members of our society, I agreed to devote myself to this case.

## ATTORNEY BACKGROUND AND EXPERIENCE

10. At the time I became involved in this case, I was a solo practitioner concentrating in plaintiff's personal injury and specializing in trial advocacy. My office has had several locations during the course of this litigation, but at the conclusion of the case my office was located at 155 Water Street, Brooklyn, New York 11201. I operated my own practice from late 2008 to September 2012. My practice was exclusively devoted to trying cases referred to me by other firms. Prior to beginning my own practice, I worked for Flomenhaft & Cannata, LLP, also doing plaintiff's personal injury and specializing in trial advocacy. Prior to that I worked at Hofstra University School of Law as a clinical fellow of the Law Reform Advocacy Clinic for a year and a half. I was

4

responsible for supervising law students in the preparation of a federal trial in the Eastern District involving multiple plaintiff's alleging violations of the Fair Housing Act. Prior to that, I held positions at Levine and Grossman, which was another plaintiff's personal injury action, and at Flomenhaft & Cannata, LLP. (I returned to work for them later.)

11. I am currently an Adjunct Professor at Fordham University School of law where I work with law students to prepare for mock trial competitions. I have held that position for over five years and prior to that I was an Adjunct Professor at Hofstra University School of Law for two years where my teaching responsibilities were the same as they are at Fordham.

12. I graduated from Hofstra University School of Law in 2001. During my law school I received the following awards in trial advocacy: Best Advocate Award – National Trial Competition, 2001; Regional Champion – ATLA (now AAJ) National Trial Competition, 2000; Judge Edward Hart Memorial Scholarship for Excellence in Trial Advocacy, 2001; and the George & Sadie Krulik Award for Outstanding Performance in Advanced Trial Advocacy, 2001.

13. During my second summer of law school, I was selected to be an intern at the Philadelphia District Attorney's office, where under the rules of that jurisdiction, I was performing similar functions and duties of a first year ADA. During my entire third year, I interned at Flomenhaft & Cannata, LLP, assisting the lead trial attorney in his trial preparation.

14. I am a member of bars of the State of New York, the United States District Courts for the Southern, Eastern, and Northern Districts of New York.

15. I have devoted my entire career to trying plaintiff's personal injury cases where individuals have been harmed by the actions of others. My trial results include: 31 jury verdicts, seven settlements during trial, and eleven settlements after jury selection. Several of my verdicts have been listed in New York Law Journal's "Notable Verdicts".

16. Since my practice was exclusively devoted to trying cases on behalf of other lawyers, they were routinely cases that had problems or issues that were so significant that settlement prior to trial was not a possibility. Many of the cases that I tried where rejected by other trial counsel because they were too problematic and I have turned them into positive recovery on behalf of the clients.

17. I have recently been retained by Hofstra University School of Law to serve as trial counsel in a case brought by one of the Law School's legal clinics on behalf of nine Hispanic clients alleging violations of the Fair Housing Act. The case is *Rivera, et al v. The Incorporated Village of Farmingdale,* 06-CV-2613, and is before the Honorable Pamela K. Chen in the Eastern District of New York. The trial is anticipated to last four to five weeks.

18. In addition to my trial experience, I am co-creator of an innovative approach in where filmmaking techniques are used to prepare trials. The approach involves taking the actual storyboarding process used by those in the film industry and applying them to the preparation of trials. This approach was used with second year law

students to assist in the trial preparation of the *Rivera* case. That case involved over 20 depositions and voluminous discovery.

19. Legal educators were interested in learning about the storyboarding approach. I made the following conference presentations: "*One 8 x 4 Foam Board, 2000 Index Cards, and Total Immersion: Storyboarding as an Approach to Legal Storymaking*," Plenary Presentation, Applied Storytelling Conference, Denver University School of Law, July 15, 2011; and "*Clinic as Studio: Storyboarding as an Approach to Trial Preparation*," AALS 2012 Conference on Clinical Legal Education, Los Angeles, CA, May 3, 2012.

## LAW STUDENT

20. Aaron Goldblum also assisted in the trial preparation of this case. At the time he worked on this case, he was entering his third year of law school at Fordham University School of Law. Mr. Goldblum was one of my students at Fordham. His responsibilities on this case included maintaining, organizing, and handling the voluminous exhibits in this case; performing legal research; assisting in document preparation; and daily trial logistical support. His work was very helpful in assisting throughout the trial preparation and trial of this matter.

## HOURS EXPENDED AND APPLICABLE RATE

21. I have to the date of the filing of the instant fee application spent 2,446.3 total hours of work on this matter. At my hourly rate of $550 per hour, my lodestar is $1,345,465. *See*, the undersigned's time sheets, annexed hereto as **Exhibit A**. My co-counsels' respective time sheets are annexed to their respective declarations accompanying the instant application. Mr. Goldblum spent 339.9 total hours of work on

this matter, and at an hourly rate of $150 per hour, the total is $50,085. *See,* Mr. Goldblum's time sheets, annexed hereto as **Exhibit B.**

22. Plaintiffs' counsel should therefore be awarded our full requested fee by this Court. My co-counsel and I worked exceedingly hard on this case, over many years, and developed it well and pressed it diligently and skillfully. Any reduction in hours beyond the 15% that we are voluntarily reducing from our lodestar in the exercise of billing judgment would be unjust and contrary to the principles underlying 42 U.S.C. § 1988.

23. The discounted lodestar that I am seeking for my work is $1,143,645. The discounted total being sought for the work of Mr. Goldblum is $42,572.

23. As referenced above, annexed hereto in support of my hourly rate are the Declarations of Stefan H. Krieger, annexed hereto as **Exhibit C**, and the Stephen D. Chakwin, Jr., annexed hereto as **Exhibit D.**


Dated: New York, New York
September 30, 2013

_____
REZA REZVANI