IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| KENNETH BAILEY, | 08-Civ-8563 (JSR) |
| CHARLES BROOKS, | 08-Civ-8665 (JSR) |
| SYLVIA TORRES, as Administratrix of the Estate of | |
| Jorge Burgos, Jr., | 08-Civ-8924 (JSR) |
| LOUIS MASSEI, | 08-Civ-8923 (JSR) |
| ROBERT TROCCHIO, | 08-Civ-8925 (JSR) |
| ROBERT WARREN, | 08-Civ-9609 (JSR) |

PLAINTIFFS

vs

GEORGE PATAKI, et al.,

DEFENDANTS
_____

DECLARATION OF DAVID A. ROTH IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES AND OTHER DISCRETIONARY COSTS
PURSUANT TO 42 U.S.C. § 1988 AND FED.R.CIV.P. 54(d)(2)

DAVID A. ROTH declares, pursuant to 28 U.S.C. § 1746 and under penalty of

perjury, as follows:

1.      I, along with other members of our litigation team, represent the Plaintiffs

in these six consolidated actions.  As such, I am fully familiar with the facts and

circumstances concerning the prosecution of this action.  I respectfully submit this

declaration in support of Plaintiffs' application, pursuant to 42 U.S.C. § 1988 and

Fed.R.Civ.P. 54(d), for an order awarding Plaintiffs attorneys' fees and costs as the

prevailing party in this litigation.

2.      I joined the Plaintiffs' team in summer of 2009. At that point a team was

being put in place, and I felt that despite the difficulties of this matter there were very

important constitutional issues involved, and that I had something to contribute to the effort.

3.      I was asked to join the Plaintiffs' team by Ameer Benno, attorney of record at that time, because of my experience and the resources my firm could bring to the Plaintiffs' litigation team.  This litigation presented many hurdles and difficulties that I was willing to take on, not only because of the importance of the issues that were involved, but also because of the availability of a lodestar recovery for the work performed in the event Plaintiffs' counsel were able to navigate the case to a victory.  The normally high risks in civil rights cases were compounded, of course, by the stigma that was attached to the clients in this matter.

4.      I and my office have significant experience litigating against the municipalities in the New York City area. I was brought on because of my experience litigating with municipal entities, although, because of the 11th Amendment and the fact that the constitutional violations in this case were committed by employees of New York State, municipal policy and practice liability under Monell would not be available in this case.  Our office has had great success in dealing with the dilatory and obfuscatory tactics of governmental entities, and obtaining the necessary discovery despite such tactics.

5.      The effort expended by the attorneys in this matter is only partially revealed by the declarations and time sheets submitted. Although my participation in drafting, researching and strategizing was more limited than the lead attorneys in this matter, I was involved in moving the case forward and helping to deal with the very often

frenetic pace of the case, especially during the trial.   The brain power and elbow grease put in by lead counsel in this case, Ameer Benno, Reza Rezvani and Jeffrey Rothman, was nothing less than amazing. No matter how difficult the assignment, no matter how tough it was to meet the deadlines, even immediately before and during trial, the Plaintiffs met those deadlines through the selfless and excellent work effort by the three lead attorneys in this matter.  Additionally the work product demonstrated throughout the various motions, intense discovery, appellate advocacy, motions in limine, and trial of this matter, from my perspective, were phenomenal examples of what a lawyer's work product should strive to be. I can say this, as the drafts that I reviewed made me proud month in and month out to be a part of a team that was submitting legal work of such high caliber.  Although the other attorneys state their disappointment in the result I only look at this team and the results it accomplished with pride, and deserving not only of respect, but of financial compensation consistent with the fee application herein. The Constitution needs lawyers like Benno, Rezvani and Rothman to protect it. The Plaintiffs in this matter, who have been convicted of serious felony sex offenses, are the most despised members of our society.  The Plaintiffs' team going up against the Governor of New York State as well as his top officials, on behalf of this group of Plaintiffs, is something that should not go without fair compensation as permitted, and contemplated, under the law.  It is perhaps unusual for one member of a litigation team to laud another in this type of application, but this is an unusual case and I have marveled over the years

at the dedication and hard work that the lead attorneys have committed to the least palatable members of society, in defense of the Constitution.

6.      The facts and legal issues in this case were both exceedingly complex.  In my 20 years of practicing I have, in fact, never seen a more complicated case than these consolidated actions, involving six plaintiffs, numerous defendants, and difficult and novel factual and legal issues of state and federal law.  Plaintiffs' successful verdict against Sharon Carpinello was achieved as a result of all the prior litigation in the case. The need to take discovery of the doctors, the records witnesses, and all of the named Defendants was required, as none of the Defendants were taking responsibility for any of their actions. It was necessary to understand each and every facet of the case, which could not have been done without the full volume of work prior to and during the trial. Each piece of knowledge, fact and nuance of the way the state handled the SVP initiative - in its totality and as applied to each Plaintiff specifically - was a building block that enabled the Plaintiffs to effectively present the case at trial and obtain a verdict against Sharon Carpinello.

7.      The Plaintiffs' team was judicious in the time spent on this case, but it was a massive undertaking and there was necessarily crossover.  Collaboration with co-counsel on successive drafts of documents was necessary for submission of an optimal work-product to the Court for important motion papers and other submissions. Additionally, it should be noted that there were numerous phone calls and communications with clients that were not recorded in our time sheets because it was not

in furtherance of the litigation, but still needed to be handled. There were numerous conferences, meetings and discussions that have not been included on the time sheets because we deemed the matters to be insufficiently related to advancing the litigation.

8.      In this matter I reviewed the work of my co-counsel, helped to draft documents, and attended numerous meetings and worked on overall strategy.

9.      The Declarations of lead counsel in this matter are extremely modest when explaining the quantity and the quality of the work that was done on this case prior to and during the trial.

## ATTORNEY BACKGROUND AND EXPERIENCE

10.     I am a partner in two firms, one Roth & Roth, LLP concentrating in personal injury and municipal litigation and the other in class action employment litigation. There are three attorneys in Roth & Roth LLP and 5 attorneys associated with Hepworth Gershbaum & Roth, PLLC.  My offices are located at 192 Lexington Avenue, Suite 802, New York, NY 10016.  I have either been a  solo  practioner  or the senior partner of my own law firm since 1993. I graduated from the University of Albany Law School in 1991.

11.     I am a member of the bars of the State of New York, and New Jersey (inactive status), the United States District Courts for the Southern, Eastern, Western and Northern Districts of New York. I have been admitted pro hac vice to several other District Courts around the Country.

12.     I have been representing Plaintiffs since 1993 and have litigated numerous municipal cases running the gamut from complicated police liability cases to advocating for Plaintiffs who have been injured by the various subsidiaries of the Metropolitan Transportation Authority.   Our office has handled and is currently handling, false arrest and imprisonment cases, and various other cases where the Plaintiffs' civil rights have been violated. I have been involved in teaching other lawyers strategies to deal with various different qualified immunity defenses through my work with the Trial Lawyers.

13.     One of the things my office brought to the case was trial support and support with the clients. Diane Clemendor, my staff senior paralegal, Wilma Velez, another very experienced paralegal, Cierra Lomax, our clerk, provided crucial support to the Plaintiffs' team. This case often required them to put all other work aside for significant periods of time, especially immediately before trial to support the trial team and make sure that we made all the deadlines set by the court.   The clerical and paralegal services they provided were critical to allow the lawyers to do their work. The phone support and communication with the lawyers, the trial team, and the clients, as well as their families, was crucial to the successful outcome. I could not afford to have that type of work done if we could not be compensated for their time in the event we were able to prevail. The paralegals coordinated getting clients to trial, as well as working on all of the subpoenas and searching throughout the country, and even Canada, for the location of witnesses that were no longer employed by the State.

14.     I am one of 9 officers of New York State Trial Lawyers Association - my title is Parliamentarian. There are approximately 3500 members of the New York State Trial Lawyers Association (NYSTLA). The responsibilities of my office require overseeing the wellbeing of the organization generally and participating in efforts to work to preserve and enhance New York's civil justice system.  I am also the Chair of the website committee and the Premises/Municipal Liability Committee, and am currently on both the Executive committee and Board of Directors of NYTSLA.  I have lectured on municipal liability and specifically on qualified immunity for both NYSTLA and the New Jersey Association for Justice. In addition I have lectured on many topics of Plaintiff's litigation, from general municipal liability practice to technology in the courtroom. I have lectured on multiple occasions for the New Jersey Association of Justice, including their premier New Jersey Boardwalk CLE which has 4500 lawyers attend over a week.  At the 2013 NJAJ Boardwalk CLE I conducted 4 lectures to over 500 attorneys. I have also developed and chaired 2 advanced lecture programs for NYSTLA: the first was a 2 day seminar covering all aspects of municipal liability, called MUNICIPAL LIABILITY: the Plaintiff's Arsenal and the other is the Subway Series, dealing with all aspects of MTA liability from trains to buses.

15.     I and my firm have had extensive experience litigating against municipalities and developing strategies to handle qualified immunity defenses. Additionally I have authored several articles focusing on the strategic prosecution when litigating bus accident cases, Conducting Depositions of The Municipal Record Keeper,

and a recent article published in the New York State Trial Lawyers Bill of Particulars

magazine entitled Municipal Discovery: A Comprehensive Analysis.

16.     As my colleague Jeffrey Rothman aptly notes, civil rights cases are

extremely difficult to litigate and only the most diligent and tenacious lawyers are able to

litigate in this field. The lead counsel in this case took that concept to another level,

especially in light of the enormous resources that were stacked against the Plaintiffs.


17.     I, along with Jeffrey Rothman and Ameer Benno, am routinely contacted

by my colleagues seeking advice on how to prosecute civil rights cases.  I also am an

active member of the National Police Accountability Project (NPAP), an organization of

over 400 Plaintiffs' attorneys across the country who work on police misconduct and

other civil rights cases. Through this organization, I have shared ideas and often helped

my colleagues with various complicated issues in Civil Rights litigation.

18.     Because the inherent risk in any civil rights case is high, and because of

the risk that civil rights cases can become protracted with multiple, time and expense

consuming layers of substantive and procedural complexity, civil rights lawyers like the

team here depend on the availability of a lodestar recovery in the event that we do

prevail.

## **HOURS EXPENDED AND APPLICABLE RATE**

19.     I have to the date of the filing of the instant fee application spent 166.29

total hours of work on this matter.  At my hourly rate of $600 per hour, my lodestar is

$99,774.  *See*, the undersigned's time sheets, annexed hereto as **Exhibit A.**  Discounted

by 15% in the exercise of billing judgment, my discounted lodestar is $84,807.90.

20.     Plaintiffs' counsel should be awarded our full requested fee by this Court. As I have stated in this declaration, although I worked hard, the effort expended by Benno, Rezvani and Rothman was monumental. The example set by the lead counsel in this case navigating, coordinating, and skillfully managing each and every aspect of this litigation is something that all lawyers should aspire too.  I would adopt my co-counsel's request that no greater than the 15% voluntary reduction in our lodestar submitted herein be made.

21.     In a wage and hour class action case, *Youngblood v Family Dollar*, 09-cv-03176-RMB, I have had my hourly rate approved at $600 per hour.  The Youngblood case was in front of Southern District Judge Richard Berman who approved the fee applied for in total, without reduction. The decision approving, without reduction, the fees in total is attached hereto as Exhibit B.  A portion of my time sheets for the *Youngblood* case is attached hereto as Exhibit C, showing that my hourly rate of $600 was approved in that case. In another case that was initially in front of this Court, *Ibea v. Rite Aid Corp.,* Civil Action No. 1: 11-cv-05260-JSR-HBP, which was then consolidated for settlement in the case of *Shirley Craig et. al. v Rite Aid* et al. 4:08-CV-02317, the fees in that were approved by Judge Jones of  the Middle District of Pennsylvania in total, and my firm's lodestar was approved as submitted for an hourly rate in 2012 of $525.00.  The decision approving the settlement, as well that portion of my fees that were requested at a rate of $525 in 2012, is attached hereto as Exhibit D.  The Declaration regarding our billing rate in the *Craig* case is attached hereto as Exhibit E.  Not only was my requested

fee approved in those cases by the Court, but lead counsel on those cases approved the fee as well, or it would not have been submitted. The rates that have been submitted on behalf of the paralegals from my firm were also reasonable.

22.     My paralegals - Diane Clemendor, Wilma Velez and Cierra Lomax - performed work on this matter, and Diane and Wilma were asked to produce their accurate time sheets on this matter. Cierra was no longer employed by my firm at the time, and it was necessary to produce the time sheets. We could not find her time sheet and my paralegal Diane Clemendor, who runs the calendar for our office and is familiar with the time Cierra spent working on this case, put Cierra's time sheet together . I have reviewed her time sheet that Diane recreated on her behalf and it seems accurate to me. I would leave to the Court's discretion, of course, if Cierra's time may be considered for compensation. I have reviewed the time sheets submitted by my paralegals associated with the work they did in this case and find it to be consistent with the work I know them to have done as well, as the time spent doing it.  Diane Clemendor is a paralegal with almost 15 years' experience - she put in 59.6 hours at a rate of $100 per hour for a total of $5,960.  Wilma Velez is a paralegal with almost 15  years of experience  - she put in 9.3 hours at a rate of $100 per hour and her total was $930. Cierra Lomax, our clerk at the time, put in 10 hours at $50 per hour for a total of $500. The Diane Clemendor and Cierra Lomax time sheet is attached hereto as Exhibit F, and the Wilma Velez Time Sheet is attached  hereto as Exhibit G.

23.     In addition to the fees and costs accrued to date, Plaintiffs will supplement their request for fees and costs to reflect all work done on this fee and cost application along with the submission of their reply papers, once the amount of work expended on this matter is completed.


Dated:          New York, New York
                September 30, 2013


                                        Respectfully submitted,

                                        _____
                                        DAVID A. ROTH Esq.
                                         One of the Attorneys for Plaintiffs
                                        192 Lexington Avenue, Suite 802
                                        New York, NY 100016