

6 of 15 DOCUMENTS

**SHIRLEY CRAIG, et al., Plaintiffs, v. RITE AID CORPORATION, et al., Defendants.**

No. 4:08-cv-2317

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

2013 U.S. Dist. LEXIS 2658

**January 7, 2013, Decided**
**January 7, 2013, Filed**

**COUNSEL:** [*1] For Shirley Craig, Individually and on behalf of all other persons similarly situated, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Bradley Berger, LEAD ATTORNEY, Berger & Associates, New York, NY; Eric L. Young, LEAD ATTORNEY, Egan Young, Philadelphia, PA; Fran L. Rudich, Jeffrey A. Klafter, Seth R Lesser, LEAD ATTORNEYS, Michael J. Palitz, Klafter Olsen & Lesser LLP, Rye Brook, NY; Gary E. Mason, LEAD ATTORNEY, The Mason Law Firm, Washington, DC; Michael A. Josephson, LEAD ATTORNEY, Fibich, Hampton & Leeborn, LLP, Houston, TX; Nicholas A. Migliaccio, LEAD ATTORNEY, Whitfield Bryson & Mason LLP, Washington, DC; Peter D. Winebrake, R. Andrew Santillo, LEAD ATTORNEYS, Mark J. Gottesfeld, Winebrake & Santillo, LLC, Dresher, PA; Daniel M. Cohen, PRO HAC VICE, Cuneo Gilbert and LaDuca LLP, Alexandria, VA; Richard L O'Meara, Murray, Plumb & Murray, Portland, ME; Robert E. DeRose, Barkan Meizlish Handelman Goodin DeRose Wentz, LLP, Columbus, OH; Steve D. Larson, Yoona Park, Stoll Stoll Berne Lokting & Shlachter PC, Portland, OR.

For Justin Torres, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Eric [*2] L. Young, LEAD ATTORNEY, Egan Young, Philadelphia, PA; Gary E. Mason, LEAD ATTORNEY, The Mason Law Firm, Washington, DC; Jeffrey A. Klafter, Seth R Lesser, LEAD ATTORNEYS, Fran L. Rudich, Klafter Olsen & Lesser LLP, Rye Brook, NY; Michael A. Josephson, LEAD ATTORNEY, Fibich, Hampton & Leeborn, LLP, Houston, TX; Nicholas A. Migliaccio, LEAD ATTORNEY, Whitfield Bryson & Mason LLP, Washington, DC; Peter D. Winebrake, R. Andrew Santillo, LEAD ATTORNEYS, Winebrake & Santillo, LLC, Dresher, PA.

For Deshawn Powell, Lisa Laun, Jeremy W. Siders, Mari Lynn Tiplady, William Martinelli, Vicki K. Lynch, Magdalen Fitch, Jennifer Paige-Hill, Sandra Zirkel, William M. Moyes, Philip W. Cunningham, Mark A. Turner, Marie Laskow, Plaintiffs: Eric Rosen, Deanna Johnson, James Fisher, Robert Vasvari, Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Eric L. Young, LEAD ATTORNEY, Egan Young, Philadelphia, PA; Fran L. Rudich, Jeffrey A. Klafter, Seth R Lesser, LEAD ATTORNEYS, Klafter Olsen & Lesser LLP, Rye Brook, NY; Michael A. Josephson, LEAD ATTORNEY, Fibich, Hampton & Leeborn, LLP, Houston, TX; Nicholas A. Migliaccio, LEAD ATTORNEY, Whitfield Bryson & Mason LLP, Washington, [*3] DC; Peter D. Winebrake, LEAD ATTORNEY, Winebrake & Santillo, LLC, Dresher, PA.

For Michael B. Veri, John M. Kuhl, Sr., Sirena A. Gray Tagoe, Marie Ali Boone, David Blackwood, Jason Lawrence Falcione, Andrius Mateikis, Margaret Pierce, Plaintiffs: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Eric L. Young, LEAD ATTORNEY, Egan Young, Philadelphia, PA; Fran L. Rudich, Jeffrey A. Klafter, LEAD ATTORNEYS, Klafter Olsen & Lesser LLP, Rye Brook, NY; Gary E. Mason, LEAD ATTORNEY, The Mason Law Firm, Washington, DC; Michael A. Josephson, LEAD ATTORNEY, Fibich, Hampton & Leeborn, LLP, Houston, TX; Nicholas A. Migliaccio, LEAD ATTORNEY, Whitfield Bryson & Mason LLP, Washington, DC; Peter D. Winebrake, LEAD ATTORNEY, Winebrake & Santillo, LLC, Dresher, PA.

For Cynthia K. Huff, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Bradley Berger, LEAD ATTORNEY, Berger & Associates, New York, NY; Eric L. Young, LEAD ATTORNEY, Egan Young, Philadelphia, PA; Fran L. Rudich, Jeffrey A. Klafter, Seth R Lesser, LEAD ATTORNEYS, Klafter Olsen & Lesser LLP, Rye Brook, NY; Michael A. Josephson, LEAD ATTORNEY, Fibich, Hampton & Leeborn, [*4] LLP, Houston, TX; Nicholas A. Migliaccio, LEAD ATTORNEY, Whitfield Bryson & Mason LLP, Washington, DC; Peter D. Winebrake, R. Andrew Santillo, LEAD ATTORNEYS, Winebrake & Santillo, LLC, Dresher, PA.

For Morgan Robert Jackson, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Brian McCafferty, LEAD ATTORNEY, Provost Umphrey, L.L.P., Philadelphia, PA; Eric L. Young, LEAD ATTORNEY, Egan Young, Philadelphia, PA; Fran L. Rudich, Jeffrey A. Klafter, LEAD ATTORNEYS, Seth R Lesser, Klafter Olsen & Lesser LLP, Rye Brook, NY; Michael A. Josephson, LEAD ATTORNEY, Fibich, Hampton & Leeborn, LLP, Houston, TX; Nicholas A. Migliaccio, LEAD ATTORNEY, Whitfield Bryson & Mason LLP, Washington, DC; Peter D. Winebrake, LEAD ATTORNEY, Mark J. Gottesfeld, Winebrake & Santillo, LLC, Dresher, PA.

For Nakoff T. Mihail, David B. Kelly, Eyrone Moton, Pamela J. Halbrook, Mark Douglas, Cheryl A. Akins, Daniel A. Gasiewicz, Shelly Kelsey, Mufutau Ibrahim, Candice Peacock, Ronnie D. Cloyd, William O. James, Jr., Plaintiffs: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Fran L. Rudich, Jeffrey A. Klafter, Seth R Lesser, LEAD ATTORNEYS, Michael [*5] J. Palitz, Klafter Olsen & Lesser LLP, Rye Brook, NY.

For Ashley Wiloughby, Ryan Shoemaker, Cynthia Staynoff, Debra Welsh, Joseph F. Savi, Edna Shelley, Plaintiffs: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Fran L. Rudich, Jeffrey A. Klafter, Seth R Lesser, LEAD ATTORNEYS, Michael J. Palitz, Klafter Olsen & Lesser LLP, Rye Brook, NY; Nicholas A. Migliaccio, LEAD ATTORNEY, Whitfield Bryson & Mason LLP, Washington, DC.

For Julian Busbee, Glenore H. Bess, Clementine Dease, Maxine Greene, Judith M. Mussick, Charles Kennedy, Maureen Dassinger, Edward Kirk, Darrell T. Plant, Cathy Long, John P. Millier, Rebecca R. Jones, Shari Albritten, Carolyn L. Conner, Crystal Huseby, Clara Cory, Mary Lee DeVitis, Margaret J. Pierce, Phyllis F. Marnor, Andrew Raulgnaitis, Paul H. Finger, Dolores Boggs, Theresa Bambino, Cheryl Hajdo, Sheila L. Beasinger, Erik Jenkins, John Keyser, Bryant K. Greaux, Katie M. Davis, Carey Krause, Kimberly A. Jones, Geraldine McKown, Menard T. Johnson, Mia C. Johnson, Meagan Nicole Archer, Connie Howard, William D. Papay, Lawrence J. Keeley, Daniel Fegnil, Barbara A. Fox, Annie Powell, Gina R. Henderson, Carol Purcell, Lewanda J. Gandee, [*6] Melissa A. Hewitt, Daniel H. Lossia, Kevin Hilton, Sandra J. Brewster, Delores A. Ashby, Ray Borrego, Sherry McLarrin, Helen R. Pace, Paul Notaro, Patrick E. Grijak, Kandice Lightner, Lorraine Harris, Sabita M. Davies, William C. Lewis, Melissa McNeil, Denny W. Gaines, Wendy Marks-Cotton, Rodrick S. Crestwell, Carol Chadwick, Michael A. Matera, Liliana LeBlanc, David L. Falls, Jr., David Kesselman, Cynthia Konrath, James Barnes, Chrisy L. Parsons, Noralee Campisi, Eenyie J. Banbel, Andrew Jennings, Quiana Cole, LaVera Johnson, Frances S. Pratt, Evelyn C. Quiambao, Myron A. Johnson, Vincent A. Howard, Laura Nuccio, Cecil Hubbard, Sampson O. Boateng, Victorine Leao, Lauren Potchak, Sereba L. Henry, Anali Geron, Sandra Hope, Tomas M. Raid, David L. Landry, Amber Milligan, Christopher Holzshu, Mark J. Czarney, Barbara G. Kirkham, Mozelle Peterson, Steven M. Donders, Michael P. Maggiacimo, Lisa Melanson, Kevin McKean, Lewis Call, Pamela J. Davis, Brian Domenicucci, Melissa Flint, Nancy M. Janerico, Susan C. Damon, Tammy R. Bragg, Cheryl K.

Foster, Kecia A. Loggins, Brandon P. Phifer, Richard L. Grimes, Peter J. Micalizzi, Trisha Dandrado-Stanley, Bryan K. Gibson, Daniel L. Knepper, Elaine [*7] M. Motyka, Judy R. Mylott, Olukunle Akingbade, James E. Columbia, II, Rachel Boswell, Zachary J. Neuman, Jacob Iglesias, Jerry Garrisnky, Maynard V. Renner, Stephen K. Neubert, Timothy Dule, Jodie L. Barager, Robin D. Mazzantini, Annie Butler, Madeline U. Mallon, Tina M. Hodge, Renee Pepe, Debbie L. Haubert, Jack D. Blaker, Cheryl H. Pope, Rickeeta M. Adams, Keith T. Asamoto, Cassandra R. Adams, Elizabeth Pitkiewicz, Patricia R. Richards, Richard Bacchus, Marva Crump, Joel L. Martin, Traci L. Baker, David J. Lawless, Louise M. Bulla, Tom Gibson, Brian M. Chewning, George H. Barney, III, Misty D. Phillips, W. Michael Randle, Roger J. Berthelette, Matthew J. Houde, Garry King, Jr., Cheryl Baltz, Richard H. Jones, Cheryl A. Goerndt, Robert Hinoiosa, Tara Morgan, Reesa R. Parker, Ceola M. Player, Carrie E. Hall, Rahim Lalani, Gloria R. Murray, Joseph Reid, Virgial J. Hunter, Tommy E. Antakikam, Stacey L. Harris, Kenneth H. Mahlstedt, Amy R. McClintock, Clay McCain, Scott T. Hooper, Dolly M. Pelley, Plaintiffs: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Jeffrey A. Klafter, LEAD ATTORNEY, Klafter Olsen & Lesser LLP, Rye Brook, NY.

For Tichina D. Steele, [*8] Susan M. Whitehurst, David C. Weiss, Marcella SanGiorgio, Nick Traficante, Marlene V. Sekelik, Brian Rossetti, Latif A. Sheikh, Jarrod Taylor, Frank J. Tassone, Darrell K. Todoroff, Jr., Alice J. Snyder, Eric Winkler, Bennet L. Sandefur, Sr., Rosalind A. Williams, Jeffrey A. Sturgill, Michelle Scott-McQuien, Ralph S. Wiest, Jr., Brian Winston, David C. Smith, Dana Spaven, Kristen L. Smith, Richy Steele, Alec Yantovsky, Richard D. Smith, Denise S. Yonkers, Brian M. Worley, Ronniese S. Thomas, Greg Williams, Janis M. Williams, Christopher D. Spiller, Bessie Shockey, Donna Sutton Wester, Rebecca Scicluna, Lisa K. Temples, Donna M. Traylor, Gigi Robinson, Pamela W. Shell, Martin M. Shultz, Jennifer Stenerson, Mary E. Roberts, Karl B. Tiitto, Kimberly K. Vance, Joe Silva, Timothy E. Truty, Janee R. Sterns, Sherita M. Williams, Nicholas Taupense, Desmond S. Robinson, Samantha Sethman, Mary Trammell, John Russo, Enrique Vazquez, Samiel W. Shore, Deborah Saccoccio, Williard L. White, Jr., Diana L. Roberts, Cristine Slezinski, Dusty St. Amand, Cynthia R. Walton, Abraham Williams, Rebecca Scott, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Jeffrey [*9] A. Klafter, LEAD ATTORNEY, Klafter Olsen & Lesser LLP, Rye Brook, NY; Nicholas A. Migliaccio, LEAD ATTORNEY, Whitfield Bryson & Mason LLP, Washington, DC.

For JoAnn Pierniak, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA.

Mohammed Hossain, Plaintiff, Pro se.

Larry Eaton, Plaintiff, Pro se.

Karriem Perkins, Plaintiff, Pro se.

For Rite Aid Corporation, Eckerd Corporation, Defendants: Beth A. Moeller, Justin M. Scott, LEAD ATTORNEYS, PRO HAC VICE, Daniel E. Turner, LEAD ATTORNEY, Bonnie Puckett, Kristy Offitt, Lauren H. Zeldin, Ogletree, Deakins, Nash, Smoak & Stewart, PC, Atlanta, GA; Suzanne K. Brown, LEAD ATTORNEY, Clara H. Rho, John M. O'Connor, Epstein Becker & Green, Newark, NJ; Tracey T. Barbaree, LEAD ATTORNEY, Ogletree Deakins, Atlanta, GA; Amanda A. Bolliger, Elizabeth A. Falcone, Leah C. Lively, Ogletree, Deakins, Nash, Smoak & Stewart PC, Portland, OR; Brian P. Downey, Pepper Hamilton LLP, Harrisburg, PA; Raphael Cunniff, Pepper Hamilton LLP, Philadelphia, PA; Dominick D. Capozolla, Ogletree Deakins Nash Smoak & Stewart PC, Morristown, NJ; Patrick G. Brady, Epstein Becker & Green, PC, Newark, NJ.

For Mare Garland, Defendant: Jeffrey [*10] A. Klafter, LEAD ATTORNEY, Klafter Olsen & Lesser LLP, Rye Brook, NY.

**JUDGES:** Hon. John E. Jones III, Judge.

**OPINION BY:** John E. Jones III

**OPINION**

**MEMORANDUM**

**I. INTRODUCTION**

Pending before the Court is the Plaintiffs' Unopposed Motion for Final Approval of Class and Collective Action Settlement, for an Award of Attorneys' Fees, and

for Approval of Incentive Awards to Class Representatives[1] (doc. 572) filed September 24, 2012. The proposed settlement ("Proposed Settlement") before the Court seeks to settle a series of lawsuits brought against Defendants Rite Aid Corporation and Eckerd Corporation d/b/a Rite Aid (collectively "Rite Aid") by several of Rite Aid's former Assistant Store Managers and Co-Managers. In these lawsuits, filed in federal and state courts across the country from Portland, Oregon to Portland, Maine, the plaintiffs challenged the propriety of Rite Aid's designation of Assistant Store Managers and Co-Managers as exempt from overtime pay requirements under the Fair Labor Standards Act ("FLSA") and various analogous state wage and hour laws. If approved, the Proposed Settlement, which totals $20.9 million and will result in an average payment to class members of $1,800, will resolve fourteen (14) [*11] consolidated cases transferred to this Court for the limited purpose of orchestrating settlement.[2]

> [1] The Settlement Class Representatives are Shirley Craig, Eddie Ibea, Jose Fermin, Justin Torres, Jennifer Elliot, Priscilla Thomas, James Fisher, Robert Vasvari, Daniel Knepper, Ralph Cedano, Donna Garia, Rene Hough, Sheryl Doyon, Robin Mazzantini, Lisa Laun, DeShawn Powell, Yvon Witty, Angel Quinones, Thomas Finley, Larry Eaton, and Karriem Perkins. They will be referred to collectively herein, where necessary, as the "Class Represenatives."
>
> [2] In addition to the above-captioned case, the following actions are consolidated herewith and included in the proposed settlement and certified class: *Fermin v. Rite Aid, et al.*, No. 1:08-cv-11364 (S.D.N.Y.), No. 1:12-cv-2602 (M.D. Pa.); *Torres v. Rite Aid Corp., et al.*, No. 3:09-cv-2922 (D.N.J.), No. 1:12-cv-1413 (M.D. Pa.); *Thomas v. Rite Aid of New Jersey, Inc., et al.*, No. 1:09-cv-5878 (D.N.J.), No. 12-cv-1413 (M.D. Pa.); *Knepper v. Rite Aid Corp., et al.*, No. 1:09-cv-2069 (M.D. Pa.); *Cedano v. Rite Aid Corp., et al.*, No. 2:10-cv-237 (D. Oregon), No. 1:12-cv-1259 (M.D. Pa.); *Ibea v. Rite Aid Corp., et al.*, No. 1:11-cv-5260 (S.D.N.Y.), No. 1:12-cv-1351 [*12] (M.D. Pa.); *Fisher v. Rite Aid Corp., et al.*, No. 1:10-cv-1865 (M.D. Pa.); *Witty v. Rite Aid Corp, et al.*, No. 1:11-cv-12 (S.D.N.Y.), No. 1:12-cv-2512 (M.D. Pa.); *Doyon v. Rite Aid Corp.*, No. 2:11-cv-168 (D. Me.), No. 1:12-cv-1250 (M.D. Pa.); *Hough v. Rite Aid Corp., et al.*, 1:11-cv-2212 (M.D. Pa.); *Mazzantini v. Rite Aid Corp., et al.*, No. 1:11-cv-2324 (M.D. Pa.); *Quinones v. Rite Aid Corp., et al.*, No. 1:11-cv-870 (M.D. Pa.); *Laun v. Rite Aid Corp., et al.*, No. 090600789 (Pa. Ct. Com. Pl., Phila.), No. 1:12-cv-1639 (M.D. Pa.); *Eaton v. Rite Aid of Penn., et al.*, No. 090400455 (Pa. Ct. Com. Pl., Phila.), No. 1:12-cv-1258 (M.D. Pa.).

These fourteen (14) cases have collectively involved the full panoply of litigation events, including class certification and decertification motion practice, dispositive motion practice, discovery, including expert discovery and discovery motion practice, and, in some cases, appellate adjudication. Counsel for all parties have worked diligently and commendably over the several years long tenure of this complex litigation to achieve the Proposed Settlement now before the Court. Fair and final resolution of this matter was hard sought, and the Court commends [*13] Class Counsel for excellent work exemplified by the final Proposed Settlement now put before us for final approval. For the reasons that follow, the Court will grant the pending Motion (doc. 572) and approve the Proposed Settlement.

## II. BACKGROUND

### A. Factual and Procedural History

As above-noted, the Proposed Settlement would resolve each of the fourteen (14) consolidated cases currently before the Court, identified at *supra* note 2. As noted above, these lawsuits involve claims brought under the FLSA and analogous state wage and hour laws on behalf of Rite Aid ASMs in approximately 4,700 stores in nearly every state.[3] The factual summary that follows is derived largely from the Proposed Settlement Agreement itself, affidavits from counsel, and other relevant documents filed contemporaneously with the instant Motion or previously on the docket.

> [3] As the parties note, the only exception to this broad inclusion is California, where Rite Aid did not classify its Assistant Store Managers and Co-Managers as exempt from overtime pay requirements during the relevant time periods.

Each of the Settlement Class[3] members was, during the relevant time period, an Assistant Store Manager or Co-Manager [*14] ("ASM") at one of approximately 4,700 Rite Aid stores throughout the United States.[4] The

members of the Settlement Class allege that they often worked well in excess of forty (40) hours per week but Rite Aid failed to compensate them for the overtime hours worked. During the relevant time period, Rite Aid had designated its ASMs as exempt from overtime pay requirements under the FLSA and its analogous state wage and hour law counterparts. The plaintiffs brought these lawsuits to challenge Rite Aid's designation and to seek reimbursement for unpaid overtime wages.

> 3   The terms "Settlement Class" or "Class" when used herein encompasses all of the class members of each of the fourteen (14) consolidated cases, including the case *sub judice*, as identified *supra* in note 2.
> 4   As is noted *infra*, while this opinion refers inclusively to "ASMs," the certified settlement class is defined to include both ASMs and Co-Managers. With the limited exception of this title difference, structure and policies of the approximately 4,700 stores were otherwise identical. Accordingly, the term ASM as used throughout this opinion includes both ASMs and Co-Managers.

Each lawsuit transferred to this Court for the purpose [*15] of settlement arrived with a different procedural posture. For the sake of brevity, rather than articulate the procedural backdrop of each consolidated case prior to its arrival in this Court, much of which is irrelevant for our purposes here, we refer the reader to the individual docket sheets for each consolidated case as identified *supra* at footnote 2. The process that brings us to the settlement posture of this litigation was initiated on June 15, 2012, when Class Counsel filed an Unopposed Motion for Preliminary Approval of Settlement (doc. 555) and supporting memorandum (doc. 556). Upon thorough consideration of that comprehensive submission, the Court granted preliminary approval of the proposed $20.9 million settlement and its terms and conditionally certified the following classes (herein "Settlement Class"):

> **FEDERAL CLASS** -- The Settlement Class Representatives, and all individuals who as of the date of the Settlement Agreement have filed consents to join any of the Wage-Hour Lawsuits identified in the Settlement Agreement, who worked at Rite Aid as a salaried Assistant Store Manager and/or a salaried Co-Manager during the three-year period prior to the earlier of their becoming [*16] a Plaintiff in their respective actions or opting into any of the Wage-Hour Lawsuits; and All other salaried Assistant Store Managers and/or salaried Co-Managers employed by Rite Aid, except in California, from three years prior to the filing of the Second Amended Complaint through the Effective Date.
>
> **STATE LAW CLASS** -- All current and former Rite Aid salaried Assistant Store Managers and/or salaried Co-Managers who are or were employed by Defendant as follows:
>
> (i) Alabama: all salaried Assistant Store Managers and salaried Co-Managers employed within the two year period preceding the filing of the Second Amended Complaint through the Effective Date.
>
> (ii) Colorado: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.
>
> (iii) Connecticut: all salaried Assistant Store Managers and salaried Co-Managers employed within the two year period preceding the filing of the Second Amended Complaint through the Effective Date.
>
> (iv) Delaware: all salaried Assistant Store Managers and salaried Co-Managers employed within the one year period preceding the filing of the Second Amended [*17] Complaint through the Effective Date.
>
> (v) District of Columbia: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the

Case 1:08-cv-08563-JSR   Document 226-4   Filed 09/30/13   Page 6 of 15

Page 6
2013 U.S. Dist. LEXIS 2658, *17

Effective Date.

(vi) Georgia: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(vii) Idaho: all salaried Assistant Store Managers and salaried Co-Managers employed within the two year period preceding the filing of the Second Amended Complaint through the Effective Date.

(viii) Indiana: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year 5 period preceding the filing of the Second Amended Complaint through the Effective Date.

(ix) Kentucky: all salaried Assistant Store Managers and salaried Co-Managers employed within the five year period preceding the filing of the Second Amended Complaint through the Effective Date.

(x) Louisiana: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through [*18] the Effective Date.

(xi) Maine: all salaried Assistant Store Managers and salaried Co-Managers employed at any time from April 22, 2005 through the Effective Date.

(xii) Maryland: all salaried Assistant Store Managers and salaried Co-Managers employed at any time from September 3, 2007 through the Effective Date.

(xiii) Massachusetts: all salaried Assistant Store Managers and salaried Co-Managers employed at any time from June 17, 2008 through the Effective Date.

(xiv) Michigan: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xv) Mississippi: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xvi) Nevada: all salaried Assistant Store Managers and salaried Co-Managers employed within the two year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xvii) New Hampshire: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year period preceding the filing of [*19] the Second Amended Complaint through the Effective Date.

(xviii) New Jersey: all salaried Assistant Store Managers and salaried Co-Managers employed at any time from July 31, 2004 through the Effective Date.

(xix) New York: all salaried Assistant Store Managers and salaried Co-Managers employed at any time from October 30, 2002 through the Effective Date.

(xx) North Carolina: all salaried Assistant Store Managers and salaried Co-Managers employed within the two year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxi) Ohio: all salaried Assistant Store Managers and salaried Co-Managers employed at any time from July 22, 2006 through the Effective Date.

(xxii) Oregon: all salaried Assistant

Store Managers and salaried Co-Managers employed at any time from March 2, 2004 through the Effective Date.

(xxiii) Pennsylvania: all salaried Assistant Store Managers and salaried Co-Managers employed at any time from April 8, 2006 through the Effective Date.

(xxiv) Rhode Island: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxv) [*20] South Carolina: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxvi) Tennessee: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxvii) Utah: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxviii) Vermont: all salaried Assistant Store Managers and salaried Co-Managers employed within the six year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxix) Virginia: all salaried Assistant Store Managers and salaried Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxx) Washington: all salaried Assistant Store Managers and salaried Co-Managers employed at any time from May 5, 2008 through the Effective Date.

(xxxi) West Virginia: all salaried Assistant Store Managers and salaried [*21] Co-Managers employed within the two year period preceding the filing of the Second Amended Complaint through the Effective Date.

(Doc. 560, ¶ 3). Thereafter, the Court-approved Notice form was provided to the 7,426 identified potential Class Members. In the interim period between our preliminary approval of the settlement and the filing of the instant motion for final approval, more than 1,961 Class Members have joined in the Settlement and submitted claims forms, and Class Counsel notes that the reaction of the Settlement Class to the Proposed Settlement has been overwhelmingly positive.

On September 24, 2012, Class Counsel filed the instant Motion for Final Approval of Class and Collective Action Settlement, for an Award of Attorneys' Fees, and for Approval of Incentive Awards to Class Representatives (doc. 572), together with a supporting memorandum and affidavits. The Court scheduled a settlement fairness hearing for October 24, 2012. Due to scheduling conflicts, the hearing was rescheduled for December 4, 2012. On October 2, 2012, an Objection to the Proposed Settlement (doc. 574) was filed by Lalena Turchi, Esquire, counsel to Jennifer Hearn and the certified class in *Hearn v.* [*22] *Rite Aid Corp., et al.*, No. SSX-L-0000429-06, a wage and hour law class action pending in New Jersey state court. *Hearn* counsel contends that the Settlement undercompensates New Jersey Settlement Class Members and fails to reflect differences in New Jersey law. We advised *Hearn* counsel of their right to appear and be heard on Ms. Hearn's behalf during the fairness hearing and further ordered *Hearn* counsel to file a brief in support of its Objection, outlining the factual and legal basis therefor, as it had failed to do so in connection with the Objection itself. *Hearn* counsel filed a brief on November 27, 2012, and Class Counsel responded on December 3, 2012. (Docs. 589, 592-93).

On December 4, 2012, the Court convened a settlement fairness hearing, with the participation of

Class Counsel, counsel for Rite Aid, and Saul Roffe, Esquire, who appeared on behalf of the Objector, Jennifer Hearn. The Court heard argument from all counsel on the fairness and adequacy of the proposed settlement and the requested fee and incentive awards in addition to considering the merits of Ms. Hearn's Objection. After consideration of the voluminous and comprehensive filings received by the Court and the [*23] supplementary argument received during the settlement fairness hearing, the Court is prepared to rule on the fairness of the Proposed Settlement.

**B. The Proposed Settlement Agreement**

The Settlement Agreement provides that Rite Aid will pay up to $20.9 million to the qualified settlement fund to resolve the Class Members' claims in their entirety. The Settlement Fund is being administered by third-party settlement administrator Garden City Group. The Settlement is designed to encompass back pay and other liquidated/statutory damages for all claims, both federal and state, in exchange for a full release of those claims. It will also cover attorneys' fees and costs, the incentive awards for Settlement Class Representative Plaintiffs, and notice and administrative costs.

According to Rite Aid's records, there are 7,342 putative members of the Class. Each Class Member will receive a share of the net Settlement based upon his or her time worked during the applicable period with a twenty percent (20%) increase for New Jersey Class Members and a ten percent (10%) increase for Pennsylvania Class Members to reflect the differences in those states' laws. The average payment to Class Members will [*24] be approximately $1,845. Notices were sent to all potential claimants, and in order to receive payment, Class Members had to submit a "Consent to Join and Claim Form." To date, 1,961 forms have been received. Garden City Group will disburse the claim amounts to Settlement Class Members within twenty-one (21) days after the Effective Date, which is defined by the Settlement Agreement as the date when we enter final approval of the Settlement.

**III. DISCUSSION**

The Motion presently before the Court seeks final class certification, final approval of the Settlement, approval of the requested attorneys' fees, and approval of the class representative incentive awards for named class representatives. We will first address *Rule 23(a)* and *(b)(3)* class certification requirements before considering the fairness and adequacy of the settlement, including a discussion of the merits of the Objection, and the reasonableness of the requested attorneys' fees and incentive awards.

**A. Final Class Certification**

As noted above, the Court has preliminarily certified the Settlement Class, defined *supra*, by Order dated June 18, 2012. (Doc. 560). The parties stipulate to and now move for final certification of the [*25] above-defined Settlement Class. In order for a lawsuit to be maintained as a class action and in seeking final approval, the named plaintiffs must establish that the defined class satisfies each of the requirements of *Federal Rule of Civil Procedure 23(a)*, which provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed. R. Civ. P. 23(a)*.

Here, common sense dictates that numerosity is established. While there is no "bright line" rule with regard to what number of class members satisfies this requirement, as a general rule, classes of more than forty (40) people typically satisfy the numerosity requirement. *See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)*. Here, the settlement class is composed of 7,342 Class Members and nearly 2,000 of those class members have expressed an interest [*26] in pursuing their claim. Individual joinder of such a substantial class is not only impracticable but practically unachievable and thus numerosity is quite patently satisfied. *See, e.g., Moskowitz v. Lopp, 128 F.R.D. 624, 628 (E.D. Pa. Dec. 7, 1989)* (noting that it is "proper for the court to accept common sense assumptions in order to support a finding of numerosity").

Second, we must query whether "there are questions

of law or fact common to the class." *Fed. R. Civ. P. 23(a)*. In sum, this element requires that the Class Representatives "share at least one question of fact or law with the grievances of the prospective class." *Stewart, 275 F.3d at 227*. Commonality "may be satisfied by a single common issue" and is typically "easily met." *Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)*. Here, the core issue as identified by both the parties and the courts entertaining these consolidated cases is and has always been whether Rite Aid's designation of ASMs as exempt from overtime compensation was proper under the FLSA, its analogous state law counterparts, or both. The ability of each Class Member to recover is directly related to resolution of this central legal issue. Accordingly, we find [*27] that commonality is amply satisfied by the proposed class.

Third, we consider whether the Class Representatives' claims are "typical" of those of other Class Members. *See Fed. R. Civ. P. 23(a)*. Typicality exists where the named plaintiff(s) establishes "that the issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as to those of unnamed class members." *Weiss v. York Hosp., 745 F.2d 786, 809-10 (3d Cir. 1984)*. The concepts of commonality and typicality are often conflated, but the two are indeed distinguishable: commonality, like numerosity, weighs the sufficiency of the class on the whole, whereas typicality, similar to the adequacy of representation inquiry, considers the sufficiency of the class representatives themselves. *Neal, 43 F.3d at 56*. Again, as noted above, each Class Member's claim flows directly Rite Aid's alleged misdesignation of ASMs as exempt from overtime requirements, and thus the legal issue central to the named plaintiff's claims is likewise central to *each* Class Member's individual claim. Accordingly, the typicality requirement is satisfied.

Finally, we must consider whether the named plaintiffs [*28] will "fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)*. In order to establish adequacy of representation, the Third Circuit requires a two-fold showing that: "(a) the plaintiffs' attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class." *Weiss, 745 F.2d at 811*. As an initial matter, we note that there is no evidence before the Court that the named plaintiffs have any interests opposing those of the class and that absent such evidence, this element is thus presumptively met. *See In re Asbestos Schools Litig., 104 F.R.D. 422, 430 (E.D. Pa. Sept. 28, 1984)*. Further, Class Counsel's collective resumes establish the Settlement Class is fortunate to be represented by exceedingly competent lawyers, experienced in employment law generally but, more importantly, with specific expertise in exactly this type of wage and hour law class action litigation and common fund settlement. Absent compelling argument to the contrary, this Court has no reason to doubt able counsels' abilities and finds that the adequacy of representation element is met.

Lastly, [*29] we consider whether the requirements of *Rule 23(b)(3)* are satisfied by this proposed Settlement class. *Rule 23(b)(3)* requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Fed. R. Civ. P. 23(b)(3)*. The Rule's concerns with case management issues as articulated in *Rule 23(b)(3)(D)* are largely removed in the settlement context and instead our focus is primarily on the elements of predominance and superiority. *See Amchem Prods. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)* ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

We find that each of the requirements of *Rule 23(b)(3)* are likewise wholly satisfied by the proposed Settlement Class. As above noted, the questions governing liability are mirrored by each individual member of the Class and thus we have no trouble concluding that the proposed Class is "sufficiently [*30] cohesive to warrant adjudication by representation." *Id. at 623*. Further, logic dictates that the instant class action structure is superior to individual litigation where there are more than 7,000 potential claimants across the United States and the likelihood of disparate judgments absent class certification is substantial. Thus, the class action is the most appropriate method for "fairly and efficiently adjudicating the controversy." *Fed. R. Civ. P. 23(b)(3)*. Accordingly, we find that the requirements of both *Rule 23(a)* and *Rule 23(b)(3)* are entirely satisfied by the proposed Settlement Class before the Court, and we will grant final class certification for the limited and sole

purpose of settlement to the Settlement Class as above-defined.

**B. Approval of Class Action Settlement**

We next turn to the important inquiry of whether the Settlement presented for approval to the Court is fair, reasonable, and adequate. The Third Circuit has often emphasized that when considering a class settlement, the district judge must "act[] as a fiduciary, guarding the claims and rights of the absent class members." *Ehrheart v. Verizon Wireless, 609 F.3d 590, 593 (3d Cir. 2010)*. In this context, a "presumption [*31] of fairness" applies if the Court finds that settlement negotiations were conducted at arm's length by experienced counsel, that there was sufficient discovery, and that only a small percentage of class members object. *See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004)*. For the reasons that follow, the presumption of fairness attaches to the settlement.

We have above concluded that Class Counsel are experienced wage and hour class action litigators with decades of accomplished class action experience between them. To say that Class Counsel vigorously prosecuted this action would be a gross understatement. We have further noted that this Settlement is the result of years of daily communication between Class Counsel and counsel for Rite Aid and is the product of arms-length bargaining and well-informed negotiations and mediations undertaken with the able and excellent guidance of United States Magistrate Judge Martin C. Carlson. Thirdly, the parties assert, and the individual dockets reflect, that substantial discovery, including but not limited to hundreds of depositions and requests for documents, has been undertaken in many of the cases subject to this omnibus [*32] settlement. Finally, only *one* objection has been filed, and thus the number of objectors is but an infinitesimal fraction of the total population of the Settlement Class, weighing in favor of applying the fairness presumption.

Against this backdrop, we consider the nine factors articulated by the Third Circuit in *Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975)*. These factors are:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendants to withstand greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 157; *see also In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 350 (3d Cir. 2010)*. The Third Circuit later identified additional, optional factors for district courts to consider, but has maintained [*33] and mandated that the courts make findings at least as to each of the nine *Girsh* factors before approving a class settlement under *Rule 23(e). Pet Foods Litig., 629 F.3d at 351*. For the reasons articulated below, after considering the Proposed Settlement through the lens of the *Girsh* factors, we find that the Settlement Agreement is fair, reasonable, and adequate.

The first factor--the complexity, expense, and likely duration of the litigation--easily favors approval of the Settlement. To date, extensive discovery and motion practice have been undertaken in each of the fourteen consolidated cases. With respect to the likely duration of this litigation, counsel for the parties aver, and we have no reason to doubt, that even the most procedurally advanced of these consolidated cases would require additional and substantial discovery in order to place the case in a trial posture. In each of the cases, dispositive motions remained to be filed and discovery disputes remained outstanding. If the history of the *Craig* case alone is any indication, and it is our supposition given the nature of these matters that it is, discovery disputes would abound in many of these individual cases resulting [*34] in additional and unnecessary delay and expense. Not only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources. For all of these reasons, the first factor weighs in favor of settlement.

The second factor--the reaction of the class members to the Settlement--also weighs in favor of settlement. As we have noted, the reaction of the Settlement Class has been largely positive. In weighing the reaction of the class, "courts look to the number and vociferousness of

the objectors." *Gen. Motors Pick-Up Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 812 (3d Cir. 1995)*. The fact that only one individual among more than 7,000 class members has objected speaks volumes of the fairness of the proposed Settlement as perceived by the Class Members themselves.5 Thus, this factor also weighs markedly in favor of settlement.

> 5   As we have discussed at length in prior orders, the sole objection has been filed by Saul Roffe and Lalena Turchai of Stark & Stark, P.C., on behalf of Jennifer Hearn and the *Hearn* Class which, as noted above, is a certified state court class action pending in New Jersey. [*35] Specifically, *Hearn* counsel asserts that the Settlement Agreement is unfair to New Jersey Settlement Class members and should grant higher compensation to New Jersey members of the Settlement Class given the differences in New Jersey law. As an initial matter, we stated during the fairness hearing, and we again emphasize, that an objection cannot be filed on behalf of an entire "class" of objectors, *see In re Diet Drugs Prods. Liab. Litig., 431 F.3d 141 (3d Cir. 2005)*, and thus to the extent *Hearn* counsel seeks to object on behalf of the entire *Hearn* class, the Objection is overruled. We thus consider the objection with respect to Ms. Hearn, individually.
>
> As we noted during the fairness hearing, we hesitate as a threshold matter to even take cognizance of the Objection as it pertains to Ms. Hearn because Ms. Hearn was not presented by counsel, either physically or by telephone, during the fairness hearing. Critically, upon inquiry by the Court, *Hearn* counsel expressed uncertainty as to whether Ms. Hearn was even aware of the settlement rights that she would be waiving if she persisted in her objection. We candidly noted during that proceeding that Ms. Hearn appears to be nothing more [*36] than a pawn in *Hearn* Class counsel's attempt to preserve and maintain its New Jersey class action. Indeed, we pressed Mr. Roffe to communicate with his client and confirm her position either during or subsequent to the fairness hearing. There is no evidence of record that he ever did so.
>
> Notwithstanding these concerns, we find that the Objection is patently without merit. Despite repeated inquiries from the Court, *Hearn* counsel could not demonstrate that the settlement is unfair to New Jersey Class Members. Fatal to *Hearn* counsel's argument is the fact, as articulated above, that the Settlement Agreement anticipated *Hearn* counsel's concerns in that it *does* grant proportionally higher settlement awards to New Jersey members of the Settlement Class to compensate for the differences in New Jersey law. Mr. Roffe's claim that the *Hearn* class is on the brink of filing summary judgment motions is belied by the fact that the *Hearn* class has not yet been noticed of the class certification. Notably, those known members of the *Hearn* class with whom *Hearn* counsel has had contact have all opted in to the instant Settlement and thus signify no interest in pursuing the *Hearn* action. Finally, *Hearn* [*37] counsel failed to present any objective evidence whatsoever to substantiate the purportedly significant variations between the Settlement award here and the expected *Hearn* class payout, presenting no method of calculation to the Court and practically conceding that the figures were mere speculation. Absent compelling argument or evidence demonstrating that this excellent Settlement is unfair to Ms. Hearn, we will overrule the said Objection.

The third factor--the stage of the proceedings and the amount of discovery completed--also weighs in favor of approval. This factor asks the Court to consider whether the parties have an "adequate appreciation of the merits of the case before negotiating." *General Motors, 55 F.3d at 815*. As the docket sheets in each of the individual cases reveal, the parties have conducted significant discovery, including obtaining experts to untangle complicated electronic discovery disputes, before the proposed Settlement Agreement was submitted to the Court. Further, the parties appreciation of the merits of the dispute and understanding the strengths and weaknesses of their respective cases is underscored by the fact that this matter has involved almost daily [*38] communications between opposing counsel for more than four years and that the parties negotiations have been informed quite actively by the excellent guidance of Magistrate Judge Carlson. All considered, this factor favors the Settlement.

Turning to the fourth and fifth factors--the risks of establishing liability and establishing damages--we must

consider the obstacles faced by the class in establishing liability and "examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *General Motors, 55 F.3d at 814*. It is undisputed that copious risks abound with respect to maintaining this action and establishing liability: class certification would need to be achieved (and/or decertification motions would need to be defeated) in each case, dispositive motions would need to be defended (and likely appealed), and multiple trials would ensue in varying venues, ultimately leading to disparate outcomes unfavorable to certain of the plaintiffs. Further, questions of law remain with respect to crucial issues such as whether Rite Aid properly exempted ASMs from overtime pay and, if so, what method of damage [*39] calculation is appropriate. In light of these substantial risks, we find that these factors likewise weigh in favor of settlement.

The sixth factor--the risk of maintaining the class action through trial--also weighs slightly in favor of settlement. As we have noted above in determining whether to certify the Class, case management concerns are all but alleviated in the context of a settlement class "because the district court always possesses the authority to decertify or modify a class that proves unmanageable." *In re Safety Components Inc. Sec. Litig., 166 F. Supp. 2d 72, 91 (D.N.J. Sept. 27, 2001)* (quoting *In re Prudential Ins., 148 F.3d 283, 321 (3d Cir. 1998))*. However, it is worth noting that while the classes in both the *Craig* and *Ibea* cases achieved *Section 216(b)* class certification, such certification in the remaining cases is far from certain and there is no guarantee that the same could be maintained through trial. Thus, although this factor is much less significant in this settlement context, we nonetheless find that the risks associated with achieving and maintaining class certifications through trial weigh slightly in favor of approving the settlement.

The seventh factor [*40] queries "whether the defendants could withstand a judgment for an amount significantly greater" than the proposed Settlement. *Id. at 91* (quoting *In re Cendant, 264 F.3d 201, 240 (3d Cir. 2001))*. The parties contend that this factor is "fundamentally irrelevant to the present proceeding." (Doc. 572, p. 42). In *Warfarin*, the court recognized that the dearth of evidence in the record related to the defendant's ability to pay a higher settlement and the nature and structure of the settlement awards, coupled with the court's recognition that the mere fact that the defendant could pay more does not mean that it is obligated to pay more, rendered this factor neutral. *In re Warfarin, 391 F.3d at 537-38*. Here, we are confronted with analogous circumstances in that there is no evidence either way with respect to Rite Aid's ability to withstand a higher judgment. We thus find that this factor is a wash and weighs neither in favor of nor against settlement.

Finally, the remaining two factors, the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation, also weigh in favor of settlement approval. This inquiry is concerned with "the [*41] economic valuation of the proposed settlement." *Safety Components, 166 F. Supp. 2d at 92*. The Court usually must compare the value of recovery to the plaintiffs should they proceed to trial, discounted by the risk of not prevailing, with the proposed settlement amount. *Id*. Here, the $20.9 million Proposed Settlement will result in an average payment of $1,845 to each of the 7,342 Class Members, and each Class Member will receive an award proportional to his or her unpaid overtime worked during the applicable limitations period. Faced with substantial litigation risks as to the remaining (and dispositive) questions of law, these proportionate settlement awards are indeed fair and reasonable relative to the best possible recovery and accounting the attendant risks of litigation.

We thus find that the ultimate balance of the *Girsh* factors weighs in favor of approving the Proposed Settlement and supports a finding that the Agreement is fair, reasonable, and adequate. We are compelled to note, after comprehensive review of the Settlement terms, that the Agreement represents an excellent and optimal settlement award for the Class Members and is the obvious result of diligent, exhaustive, [*42] and well-informed negotiations on the part of counsel for all parties. The Court commends all counsel for their excellent efforts in negotiating such an excellent Settlement Agreement.[6]

> 6   The Court would be remiss if we did not recognize the typically herculean efforts by Magistrate Judge Carlson, who spent countless hours untangling the parties' discovery disputes and ultimately negotiated this matter to a successful conclusion. Absent Judge Carlson's dedicated work, we would not have this Settlement Agreement before us, and for that we offer our abundant gratitude.

**D. Costs and Attorneys' Fees**

Class Counsel requests reimbursement for litigation expenses accrued throughout the duration of this litigation in the amount of $273,598.62. "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Datatec Sys. Sec. Litig., 2007 U.S. Dist. LEXIS 87428, *26-27 (D.N.J. Nov. 28, 2007)* (quoting *In re Safety Components, 166 F. Supp. 2d at 108*)). Class Counsel seeks reimbursement of expenses associated with "legal research, discovery, travel, depositions, mediation, meals, [*43] transportation, court fees, mailing, postage, and telephone [services]" for the more than four year period that it has been involved in these complex lawsuits. In this Court's view, these expenses are entirely reasonable given the duration and scope of this litigation and are proportionate to the results achieved. *See, e.g., id. at *3-5, 26-27* ($45,409 in expenses for $750,000 settlement); *In re Pressure Sensitive Labelstock Antitrust Litig., 584 F. Supp. 2d 697 (M.D. Pa. Aug. 5, 2008)* ($500,000 in expenses for $8.25 million settlement). With no evidence to the contrary, we conclude that the expenses were reasonably and appropriately incurred throughout the duration of this litigation and will approve Class Counsel's request for reimbursement.

We turn then to the request for attorneys' fees and costs. Class Counsel seeks an award of attorneys' fees in the amount of $6,693,067.38, representing thirty-two percent (32%) of the common Settlement fund less expenses in the amount of $273,598.62. This requested fee amount is included in the Settlement Agreement and was explained in the Notice materials to Class Members. Neither the Defendants nor any member of the Settlement Class have objected [*44] to the proposed attorneys' fee award.

In common fund cases such as this, courts typically apply the percentage-of-recovery method of calculating attorneys' fee awards subject to a lodestar cross-check. *See General Motors, 55 F.3d at 821* ("Courts use the percentage of recovery method in common fund cases on the theory that the class would be unjustly enriched if it did not compensate the counsel responsible for generating the valuable fund bestowed on the class."); *In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005)* (noting that cross-check of percentage-of-recovery method is sensible); *In re Datatec, 2007 U.S. Dist. LEXIS 87428, *15-26* (same). The Third Circuit has articulated seven factors that a district court should consider in making their percentage-of-recovery considerations:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' [*45] counsel; and (7) the awards in similar cases.

*See Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)*; *see also Rite Aid, 396 F.3d at 301*. Here, each of these factors weighs in favor of the requested attorneys' fee award.

First, the size of the fund created and the number of persons benefitted are substantial: more than 7,000 class members stand to benefit from a $20.9 million settlement fund, where the average award per class member is $1,845. Second, the attorneys' fee award remains unobjected to, evincing the Settlement Class's belief that the fee award requested is reasonable and proportionate to Class Counsel's efforts. Regarding the third factor, the skill and efficiency of Class Counsel, we have already concluded that Class Counsel are experienced wage and hour class action litigators with decades of accomplished complex class action experience between them and that the Class Members have benefitted tremendously from able counsel's representation.

Fourth, the duration and complexity of this litigation weigh in favor of the fee award. The litigation has lasted for more than four years and involved the full panoply of pretrial litigation activities as well as federal [*46] appellate practice. Class Counsel have undeniably invested significant time and resources into this complex and well-aged litigation. Fifth, concerning the risk of nonpayment, we note that because Class Counsel accepted this case on a contingent fee basis, the risk of nonpayment was and remained substantial throughout. Sixth, we look to the time committed to this litigation by Class Counsel. Class Counsel submits, and we have no

reason to disbelieve, that it has committed 14,021.59 hours to this litigation. This incredible time commitment alone, notwithstanding any other fact, weighs in favor of the requested fee award.

Finally, we consider the requested percentage relative to other known settlements. As Class Counsel notes, the Third Circuit has not set a benchmark for fee awards in common fund cases but has noted that a "range of 19 percent to 45 percent of the settlement fund [has been] approved in other litigations." *In re Schering-Plough, 2009 U.S. Dist. LEXIS 121173, at *14* (23% fee in $165 million common fund settlement approved); *see also Bradburn v. 3M, 513 F. Supp. 2d 322, 341-42 (E.D. Pa. May 14, 2007)* (35% fee in $39.75 million common fund settlement approved); *In re Corel, 293 F. Supp. 2d 484, 497-98 (E.D. Pa. Oct. 28, 2003)* [*47] (33.3% fee in $7 million common fund settlement approved). The requested fee in this matter is thirty-two percent (32%), less expenses, which is comparable and proportionate to fee awards approved in similar common fund settlements. We must also consider "whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace." *In re Datatec, 2007 U.S. Dist. LEXIS 87428, *22-23*. In this region, "[a]ttorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation" and thus we have no trouble finding that an award of thirty-two percent (32%) less expenses, which falls at the low end of that range, is consistent with market rates.

Considering all of these factors, and especially in light of the time and effort expended by counsel over the past four years, the Court finds that the requested attorneys' fee award--specifically thirty-two percent (32%) of the fund less expenses--is a reasonable percentage. As we have noted, the Third Circuit has "suggested that district courts cross-check the percentage award at which they arrive against the 'lodestar' award method." *See Gunter, 223 F.3d at 195 n.1*. Thus, [*48] In the interest of all caution, we will compare Class Counsel's lodestar figures to our percentage calculation.

Counsel have submitted more than five hundred pages of diligently documented time records supporting the summary lodestar calculations provided by counsel. The total lodestar for all Class Counsel is $5,648,473.33.[7] Class Counsel request attorneys' fees of $6,693,067.38, which results in a "lodestar multiplier" of 1.2. Such a multiplier is well within the reasonable range. *See In re Prudential Ins., 148 F.3d 283 at 341* ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *see also In re AT&T Corp. Secs. Litig., 455 F.3d 160, 173* (concluding that a multiplier of 1.28x is "within a reasonable range"). Compared with the copious time and resources expended by counsel, we conclude that a 1.2 lodestar multiplier is likewise well within the reasonable range under these circumstances. Our lodestar cross-check thus confirms our finding that the percentage attorneys' fee award requested is reasonable and appropriate.

7   This lodestar consists of the number of hours worked multiplied per staff member per firm by the hourly [*49] rate for each staff member. Each law firm has supplied a detailed affidavit substantiating the hours worked by each partner, associate, paralegal, secretary, and other law office personnel on each case. The totals are as follows: 3876.64 hours by Klafter Olsen & Lesser LLP for a lodestar of $1,848,084; 2394.70 hours by Winebrake & Santillo, LLC for a lodestar of $1,077,590; 1833.28 hours by Hepworth Gershbaum & Roth LLC for a lodestar of $863,159.83; 1277.75 hours by Whitfield, Bryson & Mason LLP for a lodestar of $442,809.50; 368.99 hours by Fibich, Hampton & Leeborn, LLP for a lodestar of $146,281.05; 1663.90 hours by Barkan Meizlish Handelman Goodin DeRose Wentz LLP for a lodestar of $333,742.20; 1171 hours by Stoll Stoll Berne Lokting & Schlachter, P.C. for a lodestar of $339,692; 358.50 hours by Cuneo Gilbert & LaDuca, LLP for a lodestar of $151,877.50; 206.9 hours by Murray, Plumb & Murray for a lodestar of $65,309.50; 290.78 hours by Pogust Braslow & Millrood, LLC for a lodestar of $116,190.50; 563.95 hours by Khorrami LLP for a lodestar of $254,617.25; and 15.2 hours by Berger Attorney, P.C. for a lodestar of $9,120. (See Doc. 573, Exs. B-M).

**E. Incentive Awards**

As a final matter, [*50] Class Counsel seeks approval of the incentive awards for the Settlement Class Representatives. The Agreement provides for an incentive award of $7,500 to Shirley Craig and $5,000 to each of the other Representatives, identified *supra* note 1.

These amounts have not been objected to by Rite Aid or by any Settlement Class Member. Incentive awards to representative plaintiffs must be "reasonable." In the Third Circuit, such awards have ranged from $1,000 up to $30,000. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.,* 2008 U.S. Dist. LEXIS 569, *23 (E.D. Pa. Jan. 3, 2008) ($30,000 incentive approved); *Godshall v. Franklin Mint Co.,* 2004 U.S. Dist. LEXIS 23976, 2004 WL 2745890, *4 (E.D. Pa. Dec. 1, 2004) ($20,000 incentive approved); *Mehling v. N.Y. Life Ins. Co.,* 248 F.R.D. 455, 467 (E.D. Pa. Mar. 4, 2008) (ranging from $7,500 to $15,000); *Varacallo v. Mass Mut. Life Ins. Co.,* 226 F.R.D. 207, 258-59 (D.N.J. Feb. 2, 2005) (ranging from $1,000 to $10,000). As Class Counsel points out, named plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation. *See Shahriar v. Smith & Wollensky Rest. Group, Inc.,* 659 F.3d 234, 244 (2d Cir. 2011). [*51] The named representatives in this litigation have made themselves available as needed, provided Class Counsel with valuable information helpful to the litigation, and exposed themselves to the risks identified in *Shahriar*, and we thus see no reason to deny or lower the agreed upon incentive awards.

### IV. CONCLUSION

For all of the reasons articulated herein, the Court will grant the pending Unopposed Motion for Final Approval of Class and Collective Action Settlement, for an Award of Attorneys' Fees, and for Approval of Incentive Awards to Class Representatives (doc. 572) in its entirety. An appropriate Order shall follow.