IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| KENNETH BAILEY, | 08-Civ-8563 (JSR) |
| CHARLES BROOKS, | 08-Civ-8665 (JSR) |
| SYLVIA TORRES, as Administratrix of the Estate of | |
| Jorge Burgos, Jr., | 08-Civ-8924 (JSR) |
| LOUIS MASSEI, | 08-Civ-8923 (JSR) |
| ROBERT TROCCHIO, | 08-Civ-8925 (JSR) |
| ROBERT WARREN, | 08-Civ-9609 (JSR) |

PLAINTIFFS

vs

GEORGE PATAKI, et al.,

DEFENDANTS
_____

DECLARATION OF RICHARD L. SULLIVAN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND OTHER DISCRETIONARY COSTS PURSUANT TO 42 U.S.C. § 1988 AND FED.R.CIV.P. 54(d)(2)

RICHARD L. SULLIVAN declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, as follows:

1. I, along with other members of our litigation team, represent the plaintiffs in these six consolidated actions, and am familiar with the facts and circumstances concerning the prosecution of this litigation. I respectfully submit this declaration in support of plaintiffs' application, pursuant to 42 U.S.C. § 1988 and Fed.R.Civ.P. 54(d), for an order awarding plaintiffs' attorneys' fees and costs as the prevailing party.

2. I first became involved in the litigation concerning the Sexually Violent Predator ("SVP") Initiative directly upon entering private practice in March of 2010, at

the invitation of Ameer Benno, a friend and colleague since approximately 2005, when he and I began working together in the Appeals Bureau of the New York County District Attorney's Office. In the Appeals Bureau, Mr. Benno and I both became schooled in the particular writing and editing process practiced in that office, which is renowned for the quality of legal writing it produces and looked to as a leader in the development of New York State criminal law.

3. Aware that we shared a unique and effective working dynamic, Mr. Benno and I were able to "hit the ground running" on written work in a variety of cases. Starting in March 2010, when I came on board, this included the cross-motions for summary judgment in the instant litigation. It is fair to say that the opportunity to work on these cases, and in particular to collaborate with Mr. Benno on the summary judgment motions (and later on the Second Circuit briefing), was a factor in my decision to enter private practice in the first place, presenting as it did the opportunity to contribute quality work in litigation that was complex and meaningful, seeking to vindicate the Constitutional rights of a set of decidedly unpopular plaintiffs. Certainly, my participation in this litigation, along with my decision to enter private practice in the area of civil rights cases, was financially risky. But, I believed from the outset, and continue to believe, that the prosecution of this action is meritorious, and that the work performed herein represents a meaningful contribution to Section 1983 practice.

4. Of particular significance, I believe, is the light cast by the jurisprudence arising from this litigation on the principle that a heightened danger of governmental

overreach exists where the party deprived of a Constitutional right is politically unpopular – surely a fundamental principle in a nation of laws. As the Second Circuit explained, "[a]lthough it may be dangerous to overstate the importance of the fact that the Initiative was quickly put into place in a politically charged environment, it is difficult to ignore (as the district court did not). Because of the infancy of the Initiative and the lack of training or formal procedures, coupled with significant political pressure, the risk of error seems to us to have been enhanced," and "[a]dditional safeguards would unquestionably have lessened this risk," Bailey v. Pataki, 708 F.3d 391, 403 (2d Cir. 2013). And, as this Court cautioned succinctly, "[t]o deprive plaintiffs of their constitutional rights for political gain can never be reasonable," Bailey v. Pataki, 722 F. Supp. 2d 443, 452 (S.D.N.Y. 2010). Future 1983 practitioners may look to the jurisprudence resulting from this litigation in other contexts where the violation of a plaintiff's Constitutional rights occurs through politically popular governmental action. Although I am disappointed that my colleagues and I were unable to obtain a monetary recovery on behalf of the plaintiffs, I am proud to have contributed, along with my colleagues, to the effort to advance these important Constitutional principles by fighting for the vindication of the rights of these particular plaintiffs.

5. I was admitted to practice in New York State courts after graduating from Boston University School of Law in 2004, and have since then been admitted to practice in Federal court in the Southern, Eastern, and Western Districts of New York. From 2004 through 2010 I worked for the New York County District Attorney's Office as an

Assistant District Attorney, first in the highly regarded Appeals Bureau, and later in the Office of the Special Narcotics Prosecutor. I currently maintain a solo practice focusing on civil rights law along with appellate practice, and I regularly work in collaboration with Ameer Benno in an of-counsel capacity to his practice.

6. My rate is $425.00 (four hundred twenty five dollars) per hour.

7. In maintaining my own practice, I am compensated based on a portion of any judgment or settlement. Given the nature of civil rights cases, my clients almost exclusively came from impoverished backgrounds and could not afford to pay significant fees. When deciding whether to take a case, I made my decision partially based on my capacity to recover on contingency. Because the inherent risk in any civil rights case is high, and because of the risk that any civil rights case can become protracted with multiple, time and expense consuming layers of substantive and procedural complexity, civil rights lawyers such as myself depend on the availability of a lodestar recovery in the event that we do prevail.

8. I join my colleagues in asserting that Plaintiffs' counsel should be awarded our full requested fees by this Court. I respectfully submit that a reduction in our fees beyond the 15% that we are voluntarily reducing in the exercise of billing judgment would be unjust and contrary to the principles underlying 42 U.S.C. § 1988.

9. I have to date spent 95.0 total hours of work on this matter. At my hourly rate of $425 per hour, these 95 hours would amount to a total of $40,375. Discounting this amount by 15%, the resulting lodestar is $34,318.75. *See*, the undersigned's time sheets, annexed hereto as **Exhibit A.**

Dated:      New York, New York
            September 27, 2013

Respectfully submitted,

_____

Richard L. Sullivan, Esq.
534 Delaware Avenue, Suite 425
Buffalo, NY 14213
Tel.: 716 - 563 – 0556
One of the Attorneys for Plaintiffs