UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
KENNETH BAILEY,                      :
                                     :
                Plaintiff,           :        08-cv-8563 (JSR)
                                     :
                - v -                :
                                     :
GEORGE PATAKI, et al.,               :
                                     :
                Defendants.          :
------------------------------------x
CHARLES BROOKS,                      :
                                     :
                Plaintiff,           :        08-cv-8665 (JSR)
                                     :
                - v -                :
                                     :
GEORGE PATAKI, et al.,               :
                                     :
                Defendants.          :
------------------------------------x
LOUIS MASSEI,                        :
                                     :
                Plaintiff,           :        08-cv-8923 (JSR)
                                     :
                - v -                :
                                     :
GEORGE PATAKI, et al.,               :
                                     :
                Defendants.          :
------------------------------------x
SYLVIA TORRES, as the               :
administratrix of the Estate of      :
JORGE BURGOS, JR.,                   :
                                     :
                Plaintiff,           :        08-cv-8924 (JSR)
                                     :
                - v -                :
                                     :
GEORGE PATAKI, et al.,               :
                                     :
                Defendants.          :
------------------------------------x

```
------------------------------------x
ROBERT TROCCHIO,                    :
                                    :
            Plaintiff,              :        08-cv-8925 (JSR)
                                    :
            - v -                   :
                                    :
GEORGE PATAKI, et al.,              :
                                    :
            Defendants.             :
------------------------------------x
ROBERT WARREN,                      :
                                    :
            Plaintiff,              :        08-cv-9609 (JSR)
                                    :
            - v -                   :
                                    :
GEORGE PATAKI, et al.,              :        MEMORANDUM ORDER
                                    :
            Defendants.             :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

After eight years of litigation, the Second Circuit Court
of Appeals affirmed a jury verdict finding former Office of
Mental Health Commissioner Sharon Carpinello liable to
plaintiffs for violation of their constitutional due process
rights. See Warren v. Pataki, No. 13-3412, 2016 WL 2865572 (2d
Cir. May 17, 2016). As prevailing parties in a § 1983 action,
plaintiffs seek attorneys' fees pursuant to 42 U.S.C. § 1988.
For the following reasons, the Court grants plaintiffs'
application for fees in the amount of $1,262,511, plus
$61,626.03 in costs.

1

The details of this case are set forth in the Second
Circuit's and this Court's prior opinions, familiarity with
which is here presumed. See, e.g., Warren v. Pataki, No. 13-
3412, 2016 WL 2865572, at *2-*7 (2d Cir. May 17, 2016); Bailey
v. Pataki, 708 F.3d 391, 393-99 (2d Cir. 2013); Bailey v.
Pataki, 722 F. Supp. 2d 443, 444-46 (S.D.N.Y. 2010). By way of
background, in 2005 then-Governor of New York George Pataki
implemented an executive initiative requiring civil confinement
in State psychiatric hospitals of inmates who, after serving
their terms of imprisonment, were deemed to be sexually violent
predators. This was known as the "SVP" initiative. A key part of
the SVP initiative was that the involuntary civil commitment was
made pursuant to § 9.27 of the New York Mental Hygiene Law (the
"MHL"), rather than § 402 of the New York Correction Law (the
"NYCL"). Although NYCL § 402 requires a judicial determination
prior to involuntary civil commitment, under MHL § 9.27 a person
could be committed without a prior judicial determination upon
the review of two state-employed psychiatrists. The plaintiffs
in the present cases were committed pursuant to the SVP
initiative and MHL § 9.27. They brought suit under 28 U.S.C. §
1983, alleging that defendants violated their Fourteenth
Amendment rights to procedural due process, among other rights.

Defendants moved to dismiss plaintiffs' claims pursuant to
Fed. R. Civ. P. 12(b)(6), including on grounds of qualified

2

immunity. This Court denied defendants' motion. See Bailey v.
Pataki, 636 F. Supp. 2d 288 (S.D.N.Y. 2009). On the parties'
cross-motions for summary judgment, the Court again denied
defendants qualified immunity, although it did grant parts of
defendants' motion for summary judgment while denying
plaintiffs' motion in its entirety. See Bailey v. Pataki, 722 F.
Supp. 2d 443 (S.D.N.Y. 2010); Bailey v. Pataki, No. 08 Civ. 8563
(JSR), 2010 WL 4237071 (S.D.N.Y. Oct. 26, 2010). The Second
Circuit upheld this Court's denial of qualified immunity ruling
on appeal. See Bailey v. Pataki, 708 F.3d 391 (2d Cir. 2013).
The case proceeded to trial, during which the Court dismissed
some of plaintiffs' other claims. Following trial, the jury
returned a verdict finding only defendant Carpinello liable,
and awarding only nominal damages ($1) to each plaintiff. The
Second Circuit affirmed. See Warren v. Pataki, No. 13-3412, 2016
WL 2865572, at *2-*7 (2d Cir. May 17, 2016).

Plaintiffs filed their motion for attorneys' fees shortly
after the trial concluded, but the Court, per its usual
practice, stayed the motion pending the appeal. Now that the
Second Circuit has affirmed, plaintiffs' motion is ripe for
resolution.

42 U.S.C. § 1988(b) provides that "[i]n any action or
proceeding to enforce a provision of section[] . . . 1983 . . .,
the court, in its discretion, may allow the prevailing party . .

3

. a reasonable attorney's fee as part of the costs." The Supreme Court has held that even a § 1983 plaintiff who wins only nominal damages is nonetheless a "prevailing party" within the meaning of § 1988. See Farrar v. Hobby, 506 U.S. 103, 113-14 (1992). Nevertheless, courts often do not award attorneys' fees to plaintiffs who seek substantial compensatory damages but recover only nominal damages, usually because, as the Supreme Court has stated, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Id. at 114-16 (internal quotation marks omitted). But success does not always take a monetary form, and so the Second Circuit has recognized that a plaintiff recovering only nominal damages may nonetheless be awarded fees when the plaintiff's success results in "ground-breaking conclusions of law" that "serve[] a significant public purpose.'" Pino v. Locasio, 101 F.3d 235, 239 (2d Cir. 1996); accord McGrath v. Toys "R" Us, Inc., 409 F.3d 513, 518 (2d Cir. 2005).

The Court concludes that this is the rare case where an award of attorneys' fees is appropriate, even though plaintiffs won only nominal damages, for the following reasons:

First, the outcome of this case resulted in "ground-breaking conclusions of law" that constituted "a new rule of liability." Pino, 101 F.3d at 239. It established for the first

4

time that the SVP Initiative was a flagrant, even monstrous, denial of plaintiffs' constitutional rights.

Defendant Carpinello argues that no new rule resulted because, before this lawsuit began, the SVP initiative had been terminated by the New York Court of Appeals and the New York legislature had enacted Article 10 of the MHL, which now expressly controls the postincarceration civil commitment of sex offenders and provides for a pre-commitment judicial hearing. See MHL § 10.01 et seq. In neither event, however, was a determination made that the SVP initiative was unconstitutional. See State ex rel. Harkavy v. Consilvio, 7 N.Y.3d 607 (2006); State ex rel. Harkavy v. Consilvio, 8 N.Y.3d 645 (2007). As such, the constitutionality of the SVP initiative was an open question before this case, and the conclusion that it violated plaintiffs' constitutional rights to due process constituted a "new rule of liability." Pino, 101 F.3d at 239.

Defendant Carpinello also argues that the outcome of this case cannot be the result of a new rule of liability because she was denied qualified immunity. In this respect, Carpinello confuses plaintiffs' success with inevitability. Just because plaintiffs convinced this Court and the Second Circuit that Carpinello violated clearly established rights does not mean that this was a foregone conclusion. Indeed, throughout the litigation, defendants strenuously maintained that they were

5

entitled to qualified immunity, as well as free of any
liability. For instance, defendants defended the practices found
unconstitutional as "longstanding" and used by the state "for
more than two decades." Defendants' Memorandum of Law in Support
of Motion for Summary Judgment at 23, ECF No. 86. Defendants
cannot now claim that the determination of the
unconstitutionality of these same "longstanding" practices is
not a new and ground-breaking rule of law.

Indeed, if a plaintiff's success in defeating qualified
immunity were sufficient to render the outcome of a suit
insufficiently novel to support attorneys' fees, civil rights
plaintiffs winning nominal damages against public officials
would be caught in a Catch-22: a finding that a right was not
clearly established would doom their claims under qualified
immunity, while a finding that a right was clearly established
would bar them from receiving attorneys' fees, ensuring that
many ground-breaking claims would not be brought or effectively
pursued. Setting up the denial of qualified immunity as a bar to
fees would thereby gut the promise of § 1988 in a particularly
significant class of civil rights cases – those against
government officials. See City of Riverside v. Rivera, 477 U.S.
561, 574-75 (1986) ("If the citizen does not have the resources,
his day in court is denied him; the congressional policy which
he seeks to assert and vindicate goes unvindicated; and the

6

entire Nation, not just the individual citizen, suffers.")
(plurality opinion) (quoting 122 Cong Rec. 33313 (1976)); Kerr
v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982)("The function of an
award of attorney's fees is to encourage the bringing of
meritorious civil rights claims which might otherwise be
abandoned because of the financial imperatives surrounding the
hiring of competent counsel."). Accordingly, the Court concludes
that the rule of liability set out in this case was sufficiently
novel to support an award of fees.

Second, the new rule of liability established by this case
serves a significant public purpose. By defendants' own
admission, the program here determined to be unconstitutional
(which, without a determination of its unconstitutionality, the
legislature and the executive would be free to resurrect) had
been used by New York State for decades. See Defendants'
Memorandum of Law in Support of Motion for Summary Judgment at
23, ECF No. 86. Thus, the present lawsuit resulted in a finding
that the procedures upon which New York State had long relied to
deprive individuals of their liberty were constitutionally
unsound. Accordingly, "[o]ne does not search in vain for the
public purpose this litigation has served. That purpose is
readily apparent:" preventing the state from unlawfully
depriving individuals of one of their most basic and cherished

rights – their liberty. Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994) (citation and internal quotation marks omitted).

This public purpose is heightened by the fact that plaintiffs had been convicted of heinous crimes, a factor that undoubtedly weighed heavily in the jury's determination. Their victory demonstrates that high-ranking public officials are bound by the law and may not violate the constitutional rights of individuals, even if they are pariahs such as plaintiffs. Ultimately, the public purpose accomplished was not only the deterrence of constitutional infractions by high-ranking officials but also an affirmation that all are equal before the law. Accordingly, the Court concludes that the conclusions of law in this case were sufficiently "ground-breaking" to support an award of attorneys' fees. Pino v. Locasio, 101 F.3d 235, 239 (2d Cir. 1996).

The parties also dispute the appropriate amount of attorneys' fees. They do agree that the "lodestar" method, "i.e., the number of hours worked multiplied by the prevailing hourly rates," is the appropriate way to calculate the fees. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546 (2010). But defendants argue that both the rates and hours proposed by plaintiffs are unreasonable. First, defendants argue that the hours requested by plaintiffs must be reduced by the amount of hours spent on unsuccessful claims, including those claims

8

brought against defendants other than Carpinello. However, the
Supreme Court has explained that

> in [some] cases the plaintiff's claims for relief will
> involve a common core of facts or will be based on
> related legal theories. Much of counsel's time will be
> devoted generally to the litigation as a whole, making
> it difficult to divide the hours expended on a claim-
> by-claim basis. Such a lawsuit cannot be viewed as a
> series of discrete claims.

Hensley v. Eckerhart, 461 U.S. 424, 435 (1983); see also
Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1997)
("Attorney's fees may be awarded for unsuccessful claims as well
as successful ones, however, where they are inextricably
intertwined and involve a common core of facts or are based on
related legal theories." (internal quotation marks omitted)). In
this case, plaintiffs' successful and unsuccessful claims all
arose from a common core of facts and legal theories, namely
plaintiffs' unlawful detention under the SVP initiative. All of
plaintiffs' claims were inextricably intertwined, such that it
is neither necessary nor practicable to attempt to separate out
the hours dedicated to plaintiffs' unsuccessful claims.

This extends to plaintiffs' unsuccessful claims against
defendants other than Carpinello: the preparation and pursuit of
these other claims were directly relevant to the successful
claim against Carpinello. For instance, defendants argue that
the deposition of defendant Pataki should be excluded, but,
regardless of the ultimate outcome of the claims against Pataki,

9

the depositions of the governor and other high-ranking officials who promulgated and implemented the SVP initiative were inextricably intertwined with plaintiffs' procedural due process claim against Carpinello.

Defendants also assert that plaintiffs' proposed hours are unreasonable, excessive, and duplicative. Defendants are correct that "excessive, redundant or otherwise unnecessary hours" should be excluded. Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1997). Defendants attack, among other items, the contributions of one attorney, Richard Gross, the volume of hours plaintiffs' various counsel spent preparing for oral argument, and the double- or triple-staffing of depositions. Upon careful review, however, the Court finds that none of the proposed hours attacked by defendants was excessive, redundant, or otherwise unnecessary. Defendants hotly contested this entire litigation and were represented by the Office of the New York Attorney General as well as by private counsel. In light of their adversaries' substantial efforts, plaintiffs' intense preparation and large team were necessary. See Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) ("The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."). Moreover, defendants have voluntarily reduced

their fees by 15% to account for any inadvertent overbilling. See Memorandum of Law in Support of Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d) at 11, ECF No. 223.

However, defendants do identify two specific categories of claimed hours that should be cut. First, they claim that plaintiffs' timesheets for which they here seek payment, include hours spent on a similar, but distinct, putative class action in the Northern District of New York, Wheeler v. Pataki, No. 9:07-CV-0892-TJM-TWD. One such entry identified by defendants does, on close reading, appear to actually be part of the instant case, rather than Wheeler. See Declaration of Joshua Pepper Ex. B at 10/15/09 entry, ECF No. 232 (6.1 hours on Reza Rezvani's timesheet, although marked as time "relate[d] to a case other than those of the six plaintiffs here," nonetheless describes the work done as "brooks and baily depo prepared," a reference to two of the plaintiffs here).[1] But except for this mistaken entry, the Court agrees that payment should not be made for the entries that defendants claim pertain to Wheeler v. Pataki

---

[1] There is a discrepancy between the hardcopy papers defendants submitted to the Court and the documents posted on ECF: in the hardcopy submission the 6.1 hours are marked in blue, as related to Wheeler, while, in the ECF document, they are marked in purple as "generally duplicative or otherwise unnecessary or unreasonable." See Declaration of Joshua Pepper, ECF No. 232. Regardless, in both documents, the 6.1 hours are included in the total 20.5 hours defendants propose subtracting from Rezvani's timesheets as related to the Wheeler case. Id. Ex. L.

rather than the present case and thereby reduces Ameer Benno's proposed hours by 0.3, see id. Ex. A at 08/15/13 entry; Reza Rezvani's proposed hours by 14.4, see id. Ex. B at 08/03/09, 08/04/09, 08/07/09, 03/15/11 entries; Diane Clemendor's proposed hours by 0.3, see id. Ex. F at 05/06/13 entry; and Matthew Walters's hours by 6.2, see id. Ex. H at 08/12/09, 08/26/09, and 08/27/09 entries.

In addition, defendants correctly point out that the records submitted for paralegal Cierra Lomax are not contemporaneous and must be disallowed. See Scott v. City of New York, 643 F.3d 56, 57-59 (2d Cir. 2011); Declaration of David A. Roth in Support of Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2) ¶ 22, ECF No. 226. Accordingly, the Court reduces Lomax's hours to zero.

Defendants also attack plaintiffs' counsel's rates as unreasonably high. "'[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984). The relevant community is the district where the district court sits. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2007). The Second Circuit has explained that a court should "bear in mind all of the case-specific variables that we

12

and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Id. In particular, "the district court should consider, among others, the Johnson factors."[2] Id.

Upon consideration of the Johnson factors and other case-specific variables, the Court concludes that the rates proposed by plaintiffs, with two exceptions, are reasonable and approximate the prevailing market rates in the relevant community. To begin with, plaintiffs' counsel have carried their "burden . . . to produce satisfactory evidence—in addition to the attorney[s'] own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

---

[2] The Second Circuit has identified the twelve Johnson factors as

> the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186 n.3.

They have done so, among other ways, by producing the National Law Journal's nationwide 2012 survey of prevailing market rates. See Declaration of Jeffrey A. Rothman in Support of Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2) Ex. F, ECF No. 231. Although the survey collects rates from firms that do not primarily engage in representing plaintiffs in civil rights' cases, it still provides the Court with a basic picture of rates in New York City and demonstrates that plaintiffs' requested rates are within the range of reasonableness. In addition to the survey, as discussed below, plaintiffs have submitted more specific materials demonstrating that each of their rates, with two exceptions, is reasonable.

Beyond this evidentiary support, a highly significant Johnson factor that applies to each rate is the 'undesirability' of the case. This was a highly undesirable case, a difficult matter that required zealous representation of individuals convicted of heinous crimes, which defendants graphically described to the jury, Tr. 3056:24-3065:25. Representation of society's least popular members is among the highest ethical duties of the legal profession. Accordingly, to the extent that plaintiffs' counsel's rates are on the higher end of prevailing market rates for civil rights work – and the Court does not even

14

think this is so - this is justified by the undesirability of the case.[3]

Further still, another significant factor was plaintiffs' counsel's skill. In the Court's view, the plaintiffs' primary lawyers in this case, notably lawyers Benno, Rezvani, and Rothman, exhibited a very high level of skill, well beyond average. Against this background, the requested rates of most of plaintiffs' counsel are more than reasonable.

To begin with, the requested rate of $600 is reasonable for David Roth and Richard Gross. Both are practitioners with decades of experience, including trial experience. See Declaration of Richard A. Gross in Support of Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2), ECF No. 229; Declaration of David A. Roth in Support of Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2), ECF No. 226. Roth's rate of $600 has previously been approved in this district as part of a class action settlement, and Gross is a comparable petitioner to Roth. See Order Granting Final Approval of Class Action Settlement and Judgment, Youngblood et al v. Family Dollar Stores, Inc., No.

---

[3] The Court also notes, at plaintiffs' counsel request, that the rates discussed here are plaintiffs' counsel's 2013 rates. See Letter dated May 19, 2016, ECF No. 241. Plaintiffs' counsel chose not to update their rates since they moved for attorneys' fees in 2016. Id.

15

09-cv-3176, ECF No. 162; Declaration of David A. Roth in Support
of Motion for Attorneys' Fees and Other Discretionary Costs
Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2) Ex. B,
C, ECF No. 226.

Similarly, the requested rate of $550 is reasonable for
Ameer Benno, Reza Rezvani, and Jeffrey Rothman, who jointly and
severally undertook some of the key work in the case. Each has
at least a decade of experience, and they have submitted
declarations from other practitioners attesting that their
requested rate is in keeping with the prevailing market rate.
See Declaration of Ameer Benno, ECF No. 224; Declaration of Reza
Rezvani in Support of Motion for Attorneys' Fees and Other
Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R.
Civ. P. 54(d)(2), ECF No. 225; Declaration of Jeffrey A. Rothman
in Support of Motion for Attorneys' Fees and Other Discretionary
Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2),
ECF No. 231. They also submitted retainer agreements showing
privately agreed upon rates of $550 for Benno and Rothman and
$450 for Rezvani. See Supplemental Declaration of Ameer Benno in
Further Support of Motion for Attorneys' Fees and Other
Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R.
Civ. P. 54(d)(2) Ex. E, ECF No. 236; Supplemental Declaration of
Jeffrey A. Rothman in Support of Motion for Attorneys' Fees and

16

Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2) Ex. A, ECF No. 235.

Likewise, the requested rate of $425 is reasonable for Richard Sullivan. He has slightly less experience than Benno, Rezvani, and Rothman. See Declaration of Richard L. Sullivan in Support of Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2), ECF No. 230. Plaintiffs submitted retainer agreements showing privately agreed upon rates of $450 for Sullivan. See Supplemental Declaration of Ameer Benno in Further Support of Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2) Ex. E, ECF No. 236.

The Court, however, reduces the proposed rates of $375 and $225 for Matthew Walters and Brian Doyle respectively. Walters and Doyle had more limited experience than their co-counsel. See Declaration of Brian Doyle in Support of Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2), ECF No. 227; Declaration of Matthew J. Walters in Support of Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2), ECF No. 228. They did not submit materials (other than their own affidavits) documenting privately agreed upon rates they have charged or specifically indicating the

17

prevailing rates for comparable practitioners. As such, the Court reduces their rates to the levels proposed by defendants, $200 for Walters and $175 for Doyle. See Defendant Carpinello's Memorandum of Law in Opposition to Plaintiffs' Motion for Attorneys' Fees at 15-16, ECF No. 233.

Defendants do not oppose the proposed rates of $100 for paralegals Diane Clemendor and Wilma Velez. See id. at 16. These rates are reasonable for paralegals. See, e.g., Clark v. Gotham Lasik, PLLC, No. 11 Civ. 01307(LGS), 2013 WL 4437220 at *8 (S.D.N.Y. Aug. 20, 2013).

Plaintiffs also request fees for the services of Aaron Goldblum, who was a law student during the relevant period. Declaration of Reza Rezvani in Support of Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2) at 7, ECF No. 225. Plaintiffs did not produce documentation pertaining to the compensation of law students for legal work. As such, the Court reduces Goldblum's rate to the $100 rate proposed by defendants. See Williams v. New York City Housing Authority, 975 F. Supp. 317, 326 (S.D.N.Y. 1997) ("A law student's time is compensable in an award of attorney fees at the same rate as a paralegal."); Defendant Carpinello's Memorandum of Law in Opposition to Plaintiffs' Motion for Attorneys' Fees at 17, ECF No. 233.

18

Taking into account the reductions detailed above, as well the 10.8 additional hours and 46.2 additional hours Rothman and Benno, respectively, expended since the filing of the fee application, see Memorandum of Law in Further Support of Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d) at 15 n.12, ECF No. 237, the Court calculates the following lodestar amounts for plaintiffs' counsel:

| Attorney | Time Spent (hours) | Rate (per hour) | Lodestar Amount |
|---|---|---|---|
| David Roth | 166.29 | $600 | $99,774 |
| Richard Gross | 73.1 | $600 | $43,860 |
| Ameer Benno | 2770.8 | $550 | $1,523,940 |
| Reza Rezvani | 2431.9 | $550 | $1,337,545 |
| Jeffrey Rothman | 787.3 | $550 | $433,015 |
| Richard Sullivan | 95 | $425 | $40,375 |
| Matthew Walters | 94.5 | $200 | $18,900 |
| Brian Doyle | 393.8 | $175 | $68,915 |
| Aaron Goldblum | 339.9 | $100 | $33,990 |
| Diane Clemendor | 59.3 | $100 | $5,930 |
| Wilma Velez | 9.3 | $100 | $930 |
| **Total** | | | **$3,607,174** |

Yet, notwithstanding all this, the Court reluctantly concludes that these lodestar amounts must be reduced in light of the limited success ultimately obtained by plaintiffs. See Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983) ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. . . . [The

19

district court] may simply reduce the award to account for the limited success."); Konits v. Karahalis, 409 Fed. Appx. 418, 420-22 (2d Cir. 2011) (Summ. Order) (affirming 25% reduction for limited success). As discussed above, the novelty and public purpose of this case mean that plaintiffs deserve an award of attorneys' fees. Nonetheless, plaintiffs' did not achieve comprehensive success. Instead, plaintiffs won nominal damages on a single claim from a single defendant after bringing multiple claims against multiple defendants. The lodestar amount should be reduced by 50% to reflect this limited ultimate success.

Applying this 50% reduction, as well as plaintiffs' discretionary 15% reduction, the Court calculates the following award of attorneys' fees:

| Attorney | Time Spent (hours) | Rate (per hour) | Lodestar Amount reduced by 65% |
|---|---|---|---|
| David Roth | 166.29 | $600 | $34,921 |
| Richard Gross | 73.1 | $600 | $15,351 |
| Ameer Benno | 2770.8 | $550 | $533,379 |
| Reza Rezvani | 2431.9 | $550 | $468,141 |
| Jeffrey Rothman | 787.3 | $550 | $151,555 |
| Richard Sullivan | 95 | $425 | $14,131 |
| Matthew Walters | 94.5 | $200 | $6,615 |
| Brian Doyle | 393.8 | $175 | $24,120 |
| Aaron Goldblum | 339.9 | $100 | $11,897 |
| Diane Clemendor | 59.3 | $100 | $2,076 |
| Wilma Velez | 9.3 | $100 | $326 |
| **Total** | | | **$1,262,511** |

The Court also grants plaintiffs' application for costs. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). Plaintiffs originally sought $157,519.28 in costs and submitted an itemized statement of litigation expenses in this amount. See Declaration of Ameer Benno Ex. C, ECF No. 224. However, in their reply to defendants' opposition, plaintiffs withdrew $42,355.91 in expense requests that were "inadvertently" included in their initial submission. See Supplemental Declaration of Ameer Benno in Further Support of Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. §1988 and Fed. R. Civ. P. 54(d)(2) at 3-4, ECF No. 148. Defendants object that all proposed costs must be disallowed because, although plaintiffs submitted an itemized list of expenses as an exhibit to a declaration submitted under penalty of perjury, plaintiffs failed to submit invoices. Defendants do not cite any controlling authority that sets out a specific requirement for invoices, as opposed to an itemized list submitted under penalty of perjury, which the Court concludes is sufficient in this case. Moreover, plaintiffs have submitted receipts for many of the expenses. See Supplemental Declaration of Ameer Benno in Further Support of Motion for

21

Attorneys' Fees and Other Discretionary Costs Pursuant to 42
U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2) Ex. F, ECF No. 236.

Defendants also argue that some of plaintiffs' expenses
should be disallowed because they are unreasonable or would not
ordinarily be charged to a client. Plaintiffs withdrew several
of these challenged expenses, including travel costs for
plaintiffs' family members. Of the remaining challenged
expenses, the Court declines defendants' request to exclude some
categories of expenses, including expenses for necessary office
supplies and business meals, as well as clothes for plaintiffs
to wear at trial, because these are expenses that would
ordinarily be charged to clients.

The Court does, however, exclude two challenged categories
of expenses, namely, the costs of admission to the Second
Circuit ($190.00), see Declaration of Joshua Pepper Ex. K at
entry 116, ECF No. 232, because this is not a cost a client
would normally pay, and expert fees ($46,500), see id. at
entries 51 and 120, because they are not reimbursable under §
1988 in a § 1983 case, see Wilder v. Bernstein, 975 F. Supp.
276, 287 n.12 (explaining that expert fees can only be part of
an attorneys' fee award under § 1988 in § 1981 or § 1981(a)
cases) (relying on West Va. Univ. Hosps., Inc. v. Davis, 499
U.S. 83 (1991)). The Court also reduces plaintiffs' request for
costs by 10% across the board because plaintiffs' descriptions

of the expenses are often vague, making the worthiness of some of them difficult to evaluate. Taken these reductions into account, the Court grants plaintiffs $61,626.03 in costs.

For the foregoing reasons, the Court hereby grants plaintiffs' motion for attorneys' fees in the amount of $1,262,511, plus $61,626.03 in costs.

The Clerk of Court is directed to close document number 222 on the docket of Bailey v. Pataki, No. 08-cv-8563; document number 134 on the docket of Brooks v. Pataki, No. 08-cv-8665; document number 134 on the docket of Massei v. Pataki, No. 08-cv-8923; document number 135 on the docket of Torres v. Pataki, No. 08-cv-8924; document number 129 on the docket of Trocchio v. Pataki, No. 08-cv-8925; and document number 133 on the docket of Warren v. Pataki, No. 08-cv-9609.

SO ORDERED.

Dated:   New York, NY
         June 16, 2016

JED S. RAKOFF, U.S.D.J.

23